**AKIN GUMP STRAUSS HAUER & FELD LLP**
JESSICA H. RO (SBN 329737)
jro@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:    310.229.1000
Facsimile:    310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
CHARLES F. CONNOLLY *(Pro Hac Vice)*
JAMES E. TYSSE *(Pro Hac Vice)*
JOSEPH DIPIERO *(Pro Hac Vice)*
cconnolly@akingump.com
jtysse@akingump.com
jdipiero@akingump.com
2001 K Street, NW
Washington, DC 20006
Telephone:    202.887.4000
Facsimile:    202.887.4288

Attorneys for Respondent

SPACE EXPLORATION TECHNOLOGIES, d/b/a
SPACEX

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Petitioner,<br><br>          vs.<br><br>SPACE EXPLORATION TECHNOLOGIES CORP., d/b/a SPACEX,<br><br>                    Respondent. | Case No. 2:21-mc-00043-DMG-MRW<br><br>**RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA**<br><br>Date Action Filed: January 28, 2021<br>Judge: Hon. Michael R. Wilner<br><br><br>Date:  March 18, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 550<br><br>**HEARING VIA ZOOM** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................1

II.    BACKGROUND ...........................................................................2

    A.    SpaceX's History & Mission................................................2

    B.    Fabian Hutter's Job Application & Interview .......................3

    C.    IER's Investigation .............................................................4

III.   LEGAL STANDARD ...................................................................7

IV.   ARGUMENT................................................................................8

    A.    IER Cannot Show That Its Subpoena Seeks Reasonable Access To Evidence That Is Relevant To Any Legitimate Investigation. .............9

        1.    IER's investigatory authority is limited to investigating charges and other situations where it has a reasonable belief that a statutory violation occurred. ...............9

        2.    IER has failed to demonstrate that it has a reasonable belief in any potential violations by SpaceX that would support its broad subpoena. ...................................................13

    B.    The Subpoena is Overbroad And Unreasonable .................15

V.    CONCLUSION...........................................................................17

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Crowell v. Benson*,
   285 U.S. 22 (1932) ................................................................................13

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades
   Council*,
   485 U.S. 568 (1988) ..............................................................................13

*EEOC v. Aaron Bros. Inc.*,
   620 F. Supp. 2d 1102 (C.D. Cal. 2009) ...............................................15

*EEOC v. Burlington N Santa Fe R.R.*,
   669 F.3d 1154 (10th Cir. 2012) ......................................................10, 12

*EEOC v. Fed. Express Corp.*,
   558 F.3d 842 (9th Cir. 2009) ...........................................8, 11, 15, 16

*EEOC v. McLane Co.*,
   No. CV-12-615-PHX-GMS, 2012 WL 1132758 (D. Ariz. Apr. 4, 2012) .........16

*EEOC v. Nationwide Janitorial Servs., Inc.*,
   No. MISC1896ODWMRW, 2018 WL 4563053 (C.D. Cal. Aug. 17,
   2018) ..........................................................................................12, 14, 15

*EEOC v. Packard Elec. Div., Gen. Motors Corp.*,
   569 F.2d 315 (5th Cir. 1978) ...............................................................10

*EEOC v. Royal Caribbean Cruises, Ltd.*,
   771 F.3d 757 (11th Cir. 2014) .............................................................11

*EEOC v. Shell Oil Co.*,
   466 U.S. 54 (1984).........................................................................12, 15

*EEOC v. TriCore Reference Labs.*,
   849 F.3d 929 (10th Cir. 2017) .............................................................10

*EEOC v. United Air Lines, Inc.*,
   287 F.3d 643 (7th Cir. 2002) ...............................................................15

ii

*McLane Co. v. EEOC*,
  137 S. Ct. 1159 (2017)....................................................................8, 11

*In re Nat'l Sec. Letter*,
  863 F.3d 1110 (9th Cir. 2017) ....................................................12

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)........................................................................13

*Okla. Press Pub. Co. v. Walling*,
  327 U.S. 186 (1946)........................................................................16

*Ortiz v. Meissner*,
  179 F.3d 718 (9th Cir. 1999) ......................................................12

*Peters v. U.S.*,
  853 F.2d 692 (9th Cir. 1988) ..................................................8, 14

*U.S. v. Constr. Prod. Research, Inc.*,
  73 F.3d 464 (2d Cir. 1996) ......................................................9, 10

*U.S. v. Fla. Azalea Specialists*,
  19 F.3d 620 (11th Cir. 1994) ...................................................8, 10

*U.S. v. Golden Valley Elec. Ass'n*,
  689 F.3d 1108 (9th Cir. 2012) ....................................................16

*U.S. v. Morton Salt Co.*,
  338 U.S. 632 (1950).................................................................12, 16

**Statutes**

Immigration and Nationality Act, 8 U.S.C. § 1324b .........................*passim*

28 C.F.R. § 44.303 .............................................................................7

28 C.F.R. § 44.304 ...........................................................................12

28 C.F.R. § 65.25 ...............................................................................7

**Other Authorities**

U.S. Constitution Fourth Amendment ..............................................2, 12

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER
TO COMPLY WITH ADMINISTRATIVE SUBPOENA

# I.   **INTRODUCTION**

This case is about whether there are meaningful limits on the subpoena power of the Immigration and Employee Rights ("IER") section of the Department of Justice—or whether, as IER argues, it is free to demand intrusive information from any U.S. company based on any investigation it can conjure up.   Without bothering to demonstrate that the subpoena it seeks to enforce is predicated on any plausible allegations of wrongdoing by SpaceX, IER demands production of confidential papers for over 3,500 SpaceX employees in every job position (from barista to rocket scientist) and across the nation (from Hawthorne, California to Cape Canaveral, Florida).   This Court should decline the request.

To be clear, SpaceX has no quarrel with IER's power to investigate a charging party's allegations—no matter how specious they may be.   Indeed, SpaceX has spent over 100 hours responding to IER's initial information request and subsequent subpoena, including producing a lengthy narrative response and thousands of pages of documents.   It did all this in an effort to cooperate with IER's investigation into a jilted job applicant's facially nonsensical national-origin-discrimination charge, despite its obvious lack of merit.   (Among other things, the charging party voluntarily disclosed his foreign citizenship *on his own resume*, and yet was subsequently selected from a pool of hundreds for two rounds of interviews.)

But SpaceX draws the line at IER's overreaching attempt to bootstrap that lone, frivolous charge into the wide-ranging (and expanding) pattern-or-practice investigations the agency is now pursuing.   Despite repeated opportunities to assert a legitimate basis for its broad investigations—including in its application to this Court—IER has failed to offer any.   IER no longer even appears to rely on the *charging party's* allegations to support its subpoena.   Instead, it merely offers the circular justification that it has essentially unfettered discretion to launch "pattern or practice" investigations

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

into any company "on its own initiative"—and that once it does so, all immigration documents in that company's possession become fair game.

That cannot be right. No matter how generously "relevance" is construed in the context of administrative subpoenas, neither the statutory and regulatory authority IER relies on, nor the Fourth Amendment to the U.S. Constitution, permits IER to rifle through SpaceX's papers on a whim and absent reasonable justification. And even if IER could somehow belatedly justify its current investigations, IER's subpoena is excessively overbroad. IER's application for an order to comply with the subpoena should be denied.

## II.   BACKGROUND

### A.   SpaceX's History & Mission

SpaceX designs, manufactures, launches, and refurbishes advanced rockets and spacecraft. SpaceX uses its rockets and spacecraft to provide "launch services," i.e., the delivery of customer payloads—including satellites, cargo, and humans—to space. SpaceX is also developing its own constellation of thousands of satellites in low Earth orbit—dubbed Starlink—to deliver broadband internet services to every corner of the globe, including rural areas that currently have little or no access to the internet. SpaceX's launch services customers include NASA, the U.S. Air Force, satellite operators, telecommunications companies, the space agencies of other countries, and educational and research organizations around the world.

In the nearly two decades since its 2002 founding, the Company has transformed the space launch industry. Among other accomplishments, SpaceX recently delivered NASA astronauts to the International Space Station and returned them safely to Earth two months later, a capability the United States has lacked—and has had to rely on Russia to provide—since the Space Shuttle was retired in 2011. In the course of only a few years, SpaceX has also become the largest satellite operator in the world, with its Starlink constellation comprising more than half of all active satellites in existence.

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

To achieve all this, SpaceX hires only extraordinarily talented and motivated people.  Consistent with its published antidiscrimination policy, SpaceX cannot afford to artificially limit the talent pool from which it hires by discriminating against anyone on the basis of their citizenship.  Indeed, SpaceX has over 9,500 employees on its payroll, including hundreds of non-U.S. citizens.

**B.    Fabian Hutter's Job Application & Interview**

In February 2020, SpaceX posted a job opening for a Technical Strategy Associate to the careers page of its website.  *See* Cardaci Decl. Ex. 1.  The post explained that the Technical Strategy Associate would be working on SpaceX's Starlink project, which aims to provide reliable, high-speed internet access on a global scale.  In compliance with federal law, the job posting notified candidates that applicants must be one of the following:  a U.S. citizen, a lawful permanent resident of the U.S., a protected individual as defined by 8 U.S.C. § 1324b(a)(3), or a person eligible to obtain the required authorizations from the U.S. Department of State.  The post also included a disclaimer emphasizing that SpaceX is an Equal Opportunity Employer, and that the company's hiring process would not be improperly influenced by any legally protected status, including, but not limited to, national origin.

The charging party, Fabian Hutter, submitted his application on February 21, 2020.  Mr. Hutter's résumé clearly stated that he was a dual Austrian and Canadian national.  *See* Cardaci Decl. Ex. 2, at 7.  He further represented that he was a "U.S. lawful permanent resident" who was "authorized to work in the United States for any employer."  *Id.* at 4.  Although SpaceX had already received hundreds of applications for this position, based on his application and résumé, Mr. Hutter was identified for an initial phone screen with a SpaceX recruiter.  During his initial screen on March 10, 2020, a SpaceX recruiter asked Mr. Hutter to confirm his citizenship and immigration status, reiterating what was in the job posting—namely, that U.S. law requires Mr. Hutter to be eligible to work in the U.S.—and on Mr. Hutter's résumé.  Mr. Hutter

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

responded by confirming that he was authorized to work in the United States. There was no further discussion of his citizenship or immigration status. Based on the initial phone screen, Mr. Hutter was invited to participate in the next phase of the hiring process, a technical phone screen. He was one of only seven applicants (out of more than 450 as of that time) to advance to the technical phone screen stage of the process.

On March 11, 2020, SpaceX employee Doug Tallmadge conducted the follow-up interview. During this interview, Mr. Tallmadge did not ask Mr. Hutter about, or otherwise raise in any way, Mr. Hutter's national origin, nationality, citizenship, or immigration status, and Mr. Hutter does not allege otherwise. Rather, Mr. Tallmadge recalls asking Mr. Hutter only two substantive questions. Unimpressed with Mr. Hutter's responses, Mr. Tallmadge wrote the following contemporaneous assessment: "[Hutter d]id not show flexibility when asked to think through Starlink specific constellation questions. Unclear on motivation for working on Starlink or in explaining why he started his 2 startups and now is moving on from them. Recommend reject as motivation in particular was concerning and he didn't show strength on the Starlink strategy questions." *Id.* at 6. There is no allegation that Mr. Tallmadge took Mr. Hutter's national origin, nationality, citizenship, or immigration status into account in deciding to reject Mr. Hutter.

Ultimately, neither Mr. Hutter nor *any* of the other candidates who received technical screening interviews advanced to the next round. As a result of his failure to advance through the entire hiring process, Mr. Hutter was never asked for, or required to provide, any employment-related documentation. SpaceX did not hire anyone into the Technical Strategy Associate position and ultimately eliminated the role.

## C.   IER's Investigation

On June 8, 2020, IER notified SpaceX that it had accepted a charge of employment discrimination from Mr. Hutter dated May 29, 2020. *See* Ex. 1 to Gov't Brief. Mr. Hutter's charge alleged that SpaceX discriminated against him based on his

4

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

citizenship status, in violation of the antidiscrimination provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324b.  Specifically, Mr. Hutter alleged that SpaceX "failed to fairly consider him for the position and made inquiries about his citizenship status in violation of 8 U.S.C. § 1324b(a)(1) and (a)(6)." *Id.*  IER then explained that its investigation was not limited to Mr. Hutter's discrimination claim and "may also explore any pattern or practice of discrimination that 8 U.S.C. § 1324b prohibits." *Id.*

IER demanded voluminous information and records from SpaceX across 13 categories (and nearly 40 separate subcategories), many of which bore no relation to Mr. Hutter's discrimination claim.  Take, for example, IER's request that SpaceX identify all job vacancies posted from June 1, 2019 to the present.  For context, SpaceX posted over 1,700 job openings during this period, seeking to fill a wide variety of positions from baristas to plumbers to highly specialized engineers.  Nevertheless, IER asked SpaceX to provide, with respect to *every job opening,* (1) a copy of the vacancy announcement; (2) the name, job title, start date, hiring date, wage or salary for each individual hired; (3) all documents relating to the hired individuals, including, but not limited to, Forms I-9, interview notes, personnel files, etc.; and (4) the name, job title, start date, phone number, and email address for each individual who made the hiring decision, among other information.

Despite the burdensome nature of the requests, SpaceX endeavored to cooperate, submitting initial responses to IER's request for information on July 8.  *See* Cardaci Decl. Ex. 3.  SpaceX's submission included detailed, narrative responses to the questions posed by IER.  SpaceX also voluntarily provided a full explanation and evidence regarding Mr. Hutter's application process and evaluation that explained why Mr. Hutter's claims were meritless, including the job listing for the Technical Strategy Associate, Mr. Hutter's application and résumé, correspondence between the SpaceX recruiter and Mr. Hutter, and a copy of the feedback memo prepared by Doug

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

Tallmadge.  SpaceX additionally provided IER with voluminous personnel records, including Excel spreadsheets, that disclosed: (1) over 1,700 job openings posted by SpaceX between June 1, 2019 and June 12, 2020; (2) over 2,500 job openings filled since June 1, 2019; and (3) over 2,700 employees who were hired between June 1, 2019 and June 12, 2020.  This data covered job openings in five states across nine different locations and related to a wide range of jobs, including temporary and part-time positions, such as line cooks and custodians.  In total, SpaceX employees spent over 100 hours, and provided over 1,000 pages of documents, responding to IER's information requests.

IER responded a month later by notifying SpaceX that its production was "deficient in several regards."  *See* Cardaci Decl. Ex 4., at 25 (hereinafter the "August 13 Letter").  IER requested that SpaceX supplement its responses, including by providing Forms I-9 for each individual employee hired or re-verified since June 1, 2019.  In addition, IER *expanded* its already-voluminous initial request by demanding additional categories of documents, including sample offer letters, training materials, and scripts used by recruiters during the initial screening process of job candidates.  IER also stated that it was investigating "possible use of unfair documentary practices based on citizenship status or national origin in the employment eligibility verification process in violation of 8 U.S.C. § 1324b(a)(6)," *id.*, even though SpaceX never asked Mr. Hutter to provide any documents.

Over the ensuing months, SpaceX continued to produce voluminous additional records in response to IER's requests, including the sample offer letter, interview questions, and training materials.  SpaceX also produced an Excel chart containing Form I-9 and E-Verify data for the over 3,500 employees hired or re-verified between June 4, 2019 and August 17, 2020.  The Excel chart identifies the employees' first and last name, hire date, the documents used to verify the employees' I-9 status, and the last four digits of the employees' social security number.  An index of the materials that

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

SpaceX has produced to date is attached as Cardaci Decl. Ex. 5. SpaceX also attempted to reach a reasonable accommodation with IER with respect to the remaining burdensome requests in the August 13 Letter. In particular, SpaceX sought to avoid the burden and expense of producing supporting I-9 documentation (such as passports, driver's licenses, social security cards, permanent resident cards, alien registration receipt cards, and birth certificates) for over 3,500 employees.

Rather than compromise, on October 5, 2020, IER secured an administrative subpoena from OCAHO pursuant to 8 U.S.C. § 1324b(f)(2), requesting the following with respect to *each* Form I-9 listed in the Excel chart SpaceX had produced: (1) any and all attachments to the Form I-9; (2) any E-verify related printouts or other E-Verify document related to the Form I-9; and (3) any employment eligibility document related to the Form I-9. SpaceX again asked IER to more narrowly tailor the subpoena to address matters properly under investigation. On October 20, 2020, IER informed SpaceX that it was not interested in any accommodation regarding the scope of its subpoena short of full compliance. After OCAHO denied SpaceX's Petition to Modify or Revoke the Subpoena pursuant to 28 C.F.R. § 65.25(e), SpaceX informed IER that it would not produce additional documents absent a court order. This application followed.

Of note, with regard to Mr. Hutter's charge, the terms of IER's June 8, 2020 charging letter specified that IER had until September 28, 2020 to conduct its investigation into Mr. Hutter's discrimination charge, at which time it was required to notify SpaceX either that it was not pursuing charges or that it needed additional time to conduct its investigation. *See* 28 C.F.R. § 44.303(a)-(b). IER provided no such notice to SpaceX, nor has it filed a complaint regarding Mr. Hutter's charge.

## III. **LEGAL STANDARD**

The parties agree on the applicable standard, which is borrowed from the EEOC subpoena context: An administrative subpoena may be enforced by a district court if the government shows that (1) the inquiry is within the authority of the investigating agency,

(2) procedural requirements have been followed, and (3) the evidence sought is reasonably relevant to the investigation. *See* Br. 6 (citing *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009)); *see Peters v. United States*, 853 F.2d 692, 699–700 (9th Cir. 1988) (similar standard for Immigration and Naturalization Service ("INS") subpoena). If the government makes that showing, the subpoenaed party has the opportunity to show that the request is overly broad or unduly burdensome. *See id*. This Court's decision to enforce a subpoena (or not) is reviewed for abuse of discretion. *See McLane Co. v. EEOC*, 137 S. Ct. 1159, 1169 (2017).

At the February 8, 2021 status conference, the Court asked the parties whether it was bound by the order issued by the OCAHO administrative law judge ("ALJ"). As indicated by the parties' agreement above regarding this Court's independent obligation to evaluate subpoena enforceability, and as the limited caselaw in this area demonstrates, the answer is plainly no. *See, e.g.*, *U.S. v. Fla. Azalea Specialists*, 19 F.3d 620, 623 (11th Cir. 1994) (applying above test). IER is asking this court to enforce an administrative subpoena, not to review OCAHO's decision denying SpaceX's petition to revoke it; accordingly, this Court owes no deference to OCAHO's order. *See Peters*, 853 F.2d at 695 ("The scope of the INS's subpoena power and the consistency of the subpoena with the fourth amendment are questions of law which we review *de novo*."). Nor must the court defer to IER's characterizations of the relevance of the subpoenaed information. *See McLane*, 137 S. Ct. at 1169 (despite reviewing issues of relevance generously, courts "need not defer to the [agency's] decision on that score").

## IV.   **ARGUMENT**

IER's enforcement application is the very definition of government overreach. Its subpoena would require the compelled production of confidential I-9 records for over 3,500 SpaceX personnel based on an isolated, facially meritless national-origin-discrimination charge by a job applicant rejected for a position that was never filled, and who was never asked to provide any I-9 records himself. Although SpaceX agrees that

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

IER has "broad statutory authority to investigate allegations of citizenship discrimination," Br. 7, it does not accept that IER has authority to pursue suspicions of "potential" violations untethered to any reasonable belief that a violation occurred.

At every turn, SpaceX's good-faith efforts to cooperate with the legitimate scope of IER's investigation have been met with increasingly invasive, burdensome, and irrelevant documentary requests. While SpaceX considers IER's subpoena to be unduly burdensome given its lack of relevance, SpaceX's opposition to IER's subpoena focuses on the first factor (regarding the government's investigatory authority) and the third factor (regarding the relevance of the information sought). Specifically, IER's application should be denied because IER failed to meet its burden of showing that the information it seeks is reasonably relevant to any legitimate investigation.

### A. IER Cannot Show That Its Subpoena Seeks Reasonable Access To Evidence That Is Relevant To Any Legitimate Investigation.

1. *IER's investigatory authority is limited to investigating charges and other situations where it has a reasonable belief that a statutory violation occurred.*

Congress granted investigatory authority to IER in 8 U.S.C. § 1324b(c)(2); *see* Br. 7 (citing provision as source of IER's "broad statutory authority"). By its terms, that provision authorizes only the "investigation of charges"—not investigations into anything that catches IER's fancy. 8 U.S.C. § 1324b(c)(2) ("The Special Counsel shall be responsible for investigation of charges and issuance of complaints under this section . . . ."); *see also id.* § 1324b(d) (specifying procedures for "Investigation of charges"). Such a "charge," moreover, may be filed "with the Special Counsel" only by an "individual" or DHS (formerly INS) officer. *Id.* § 1324b(b)(1). Thus, in granting authority to the Special Counsel, Congress required that any investigation be tethered to the filing of a "charge." It also afforded IER only "reasonable access"—not unfettered access—to an entity's papers. *Id.* § 1324b(f)(2). Put another way, the agency has no free-ranging authority to "conduct any investigation it may conjure up." *See U.S. v.*

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

*Constr. Prod. Research, Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (discussing subpoena issued by Nuclear Regulatory Commission).

Although the caselaw interpreting IER's authority is sparse, federal courts in the analogous context of EEOC subpoenas have rejected agency attempts to use solitary discrimination claims to justify administrative subpoenas touching upon inadequately supported suspicions of pattern-or-practice discrimination.  *See Fla. Azalea Specialists*, 19 F.3d at 624 (noting that EEOC is one of two "agencies most analogous to the Special Counsel in terms of mission").  For example, in *EEOC v. Burlington N. Santa Fe R.R.*, the Tenth Circuit quashed a nationwide administrative subpoena seeking information on "every current or former employee, across the country" based on isolated charges of discrimination.  669 F.3d 1154, 1157 (10th Cir. 2012).  In rejecting that "incredibly broad request," the Court reasoned that the "wide deference" generally afforded subpoenas could not "transcend the gap" between the specific discrimination charges at issue and the much broader "pattern or practice" investigation that the federal government was pursuing.  *Id.* at 1156–58; *see id.* at 1157 (noting that EEOC's request did not mention "any other charging party, an additional charge . . . , or anything else").  Although the agency enjoyed the power to "expand its search" if it "ascertain[ed] some violation warranting a broader investigation," it failed to justify that broader investigation when it sought judicial enforcement.  *Id.* at 1159.

A few years later, in *EEOC v. TriCore Reference Labs.*, the court of appeals again found no abuse of discretion in a district court's holding that "the EEOC had not satisfied its burden to justify its expanded investigation," given that a "single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation."  849 F.3d 929, 939–40 (10th Cir. 2017); *see, e.g.*, *EEOC v. Packard Elec. Div., Gen. Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978) (affirming district court's finding of lack of relevancy where "it is not immediately evident that" the subpoena "bears on the subject matter of these individual complaints," at least "in the absence of

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

some showing by the EEOC to the contrary"); *cf. Fed. Express Corp.*, 558 F.3d at 854 (enforcing subpoena where EEOC was "investigating a charge that alleges systemic discrimination affecting African American and Latino employees in FedEx's eleven-state Western region").

Similarly, in *EEOC v. Royal Caribbean Cruises, Ltd.*, the Eleventh Circuit rejected the argument that the EEOC, without an adequate relevancy showing, "is entitled to expand [its] investigation to uncover other potential violations and victims of discrimination" beyond the charge under investigation. 771 F.3d 757, 761 (11th Cir. 2014). "Although eradicating unlawful discrimination and protecting other as-yet undiscovered victims are laudatory goals and within the Commission's broad mandate, the EEOC must still make the necessary showing of relevancy in attempting to enforce its subpoena." *Id.*; *see id.* at 761–62 (agreeing that "the broad company-wide information sought by the EEOC here has not been demonstrated to be relevant to the only contested issues that" arose from the individual's charge); *see also McLane*, 137 S. Ct. at 1167 (2017) ("In the mine run of cases, the district court's decision whether to enforce a subpoena will turn either on whether the evidence sought is relevant to the *specific charge before it* or whether the subpoena is unduly burdensome in light of the circumstances.") (emphasis added).

Citing 8 U.S.C. § 1324b(d), IER argues (Br. 11) that its investigatory authority is broader than the EEOC's. But subsection (d)—titled "Investigation of *charges*"—merely clarifies the Special Counsel's authority in carrying out its duties under 8 U.S.C. § 1324b(c)(2), which also explicitly refers to the "investigation of *charges*." Although subsection (d) allows the Special Counsel "on his own initiative" to "conduct investigations," the context and location of that provision clarifies that such investigations must still stem from a "charge" filed with IER—or, at least, the agency's reasonable belief that a violation occurred. That reading is confirmed by the fact that IER is granted only "reasonable" (not unlimited) access to evidence, 8 U.S.C. § 1324b(f)(2), and by IER's

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

own regulations, which permit the Special Counsel to conduct investigations on its own initiative only "when there is *reason to believe* that a person or other entity has engaged or is engaging in such [unfair immigration-related employment] practices."  28 C.F.R. § 44.304 (emphasis added).  Thus, like EEOC, "[n]othing prevents the [IER] from investigating the charges filed [by Mr. Hutter] and then—if it ascertains some violation warranting a broader investigation—expanding its search."  *Burlington*, 669 F.3d at 1159. But also like EEOC, neither the statute nor regulation *authorizes* IER to expand its search absent at least a reasonable belief that such a violation has occurred.[1]

Accepting IER's circular logic—*i.e.*, that the pattern-or-practice documents IER seeks are necessarily "relevant" to any pattern-or-practice investigation IER can conjure up—would render the statutory "reasonableness" limitation a "nullity."  *See EEOC v. Nationwide Janitorial Servs., Inc.*, No. MISC1896ODWMRW, 2018 WL 4563053, at *3 (C.D. Cal. Aug. 17, 2018) (quoting *EEOC v. Shell Oil Co.,* 466 U.S. 54, 69 (1984)).  If IER's logic were accepted—and as this matter shows—IER could launch a nationwide fishing expedition on the pretext of a facially meritless charge, without any obligation to justify its wide-ranging search.  Such an interpretation would raise serious concerns under the Fourth Amendment, which (like 8 U.S.C. § 1324b(f)(2)) requires government searches of private parties to be "reasonable."  *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"); *see U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding that Fourth Amendment protections apply to "governmental investigations into corporate matters"); *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1126 (9th Cir. 2017) ("A court's order enforcing an administrative subpoena must

---

[1] IER relies exclusively on caselaw from OCAHO (located within the Executive Office for Immigration Review) to imply that Congress granted it broader authority than EEOC, but this Court "need not defer" to agency interpretations if it "can ascertain congressional intent using the traditional tools of statutory construction."  *Ortiz v. Meissner*, 179 F.3d 718, 723 (9th Cir. 1999).

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

be within constitutional bounds.").  Especially given those constitutional concerns, this Court should reasonably interpret 8 U.S.C. § 1324b to require the agency to demonstrate its reasonable belief that a relevant violation occurred before enforcing a broad pattern-or-practice subpoena like this one.  *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (explaining that if a statutory construction that avoids a serious constitutional question is "reasonable," court must adopt it); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 563 (2012) ("The question is not whether that is the most natural interpretation, but only whether it is a 'fairly possible' one.") (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

2. *IER has failed to demonstrate that it has a reasonable belief in any potential violations by SpaceX that would support its broad subpoena.*

Applying the above standard, it is clear that IER failed to meet its burden of demonstrating at least a reasonable belief in any potential alleged violations by SpaceX that would support its broad pattern-or-practice subpoena.  The sole allegations of statutory violations that IER mentions (in passing) relate to Mr. Hutter's allegation of individual discrimination.  *See* Br. 3 & Sandoval Decl. ¶ 2 (charging party alleged that SpaceX "made inquiries about his citizenship status and ultimately failed to hire him for the position because he is not a U.S. citizen or lawful permanent resident").  To be clear, SpaceX does not dispute that IER may investigate *his* allegations—indeed, SpaceX has fully cooperated with that aspect of IER's investigation.

But IER's current subpoena goes well beyond—indeed, no longer even appears to relate to—Mr. Hutter's charge.  Remarkably, outside a brief mention in the background section of its brief, IER references Mr. Hutter's charge only to argue that its investigatory authority *extends beyond* the "charging party's allegations."  *See* Br. 8 (arguing that IER has "authority to investigate beyond a charging party's allegations"); Br. 11 (arguing that IER is not "limited to investigating the allegations in the charge" "made by the Charging Party"); *id.* (arguing that SpaceX "improperly limit[s] relevance

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

in a § 1324b investigation to a charging party's allegations"). Indeed, IER must concede that the I-9 documents it seeks are not relevant to *Mr. Hutter's* charge, considering he was never asked to produce such papers.[2] And given that IER has missed its own September 28 deadline to notify SpaceX whether it was pursuing charges or needed additional time, it seems that *even IER* now agrees that Mr. Hutter suffered no national-origin discrimination. *See* Ex. 1 to Gov't Brief.

Rather than relying on Mr. Hutter's allegations, IER instead argues that its subpoena is relevant to two "pattern or practice" investigations (into "national origin discrimination" and "unfair documentary practices") regarding 3,500 SpaceX employees. *See* Br. 10-11 (arguing that it is "hard to imagine information more relevant to an unfair documentary practices investigation . . . than Form I-9 data"). But even then, IER offers this Court only the flimsiest of justifications for those wide-ranging investigations—namely, that the subpoena might "enable IER to identify *potential* victims of citizenship discrimination" or "reveal trends in document collection . . . that *may* support an unfair documentary practices claim." Br. 10. That is nowhere close to sufficient. The Ninth Circuit has held, in the context of an INS investigation, that an administrative subpoena should not "be in the nature of a 'fishing expedition.'" *Peters*, 853 F.2d at 700. Although this Court previously permitted the enforcement of the subpoena at issue in *Nationwide Janitorial Servs.*, the agency there was able to "plausibly point[] to a broader investigation it [was] conducting," based on (1) "evidence . . . of incidents of additional potential discriminatory or violative conduct" that went "beyond the one-attacker-one-location allegations that commenced the investigation," (2) "other alleged misconduct by individuals other than the

---

[2] IER notes that, under a different provision of the INA, 8 U.S.C. § 1324a ("Unlawful employment of aliens"), it is "explicitly entitled" to "inspect[]" I-9 documents "by law." Br. 10. Whatever the scope of IER's inspection authority when investigating unlawful alien employment, however, IER is afforded only "reasonable access" under the lone statutory authority it invokes. 8 U.S.C. § 1324b(f)(2); *see* Gov't Ex. 3 (subpoena issued "under the authority of [8 U.S.C. § 1324b(f)(2)]," not § 1324a).

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER
TO COMPLY WITH ADMINISTRATIVE SUBPOENA

perpetrator in the original actions," and (3) "information regarding an incident at an unrelated NJS location involving another employee / supervisor." 2018 WL 4563053, at *4. IER conspicuously fails to point to similar allegations or evidence here.

In sum, even if IER is entitled "access to virtually any materials that might cast light on the allegations against the employer," Br. 9 (quoting *Fed. Express Corp.*, 558 F.3d at 854), it still must offer some reasonable basis to believe that a statutory violation occurred, *see id.* at 855 (enforcing subpoena in context of "charge that alleges systemic discrimination" across eleven states). Yet despite repeated requests, IER has offered nothing to SpaceX, to OCAHO below, or (most importantly) to this Court that might justify its current fishing expedition—and it is too late for it to do so now. Given the patent lack of any connection between Mr. Hutter's charge and IER's sweeping subpoena, IER's position is in essence that it would have the authority to issue the same subpoena to *any* company, "*including where no charge is filed.*" Br. 7 (emphasis added). That position should be rejected, and IER's application should be denied.

## B.   The Subpoena is Overbroad And Unreasonable

Even if IER could belatedly justify its broad "pattern and practice" investigations, this Court still should not enforce IER's overbroad subpoena. As noted, this Court has recognized in the EEOC subpoena context that, although relevance is generously construed, "there are outer limits" to an agency's investigative powers, and a court should not construe an agency's "investigative authority so broadly that the 'relevance requirement' becomes 'a nullity.'" *Nationwide Janitorial Servs.*, 2018 WL 4563053, at *3 (quoting *Shell Oil*, 466 U.S. at 69); *cf. EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) ("Absent a finding that the material sought is relevant, a court may not enforce an EEOC subpoena."). Instead, the agency should have a "realistic expectation it [would] discover relevant evidence" from the subpoena. *EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1107 (C.D. Cal. 2009). The ultimate question "comes down to [whether] specification of the documents to be produced [is] adequate, but not

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

excessive, for the purposes of the relevant inquiry." *U.S. v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1115 (9th Cir. 2012) (quoting *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946)); *see Fed. Express Corp.*, 558 F.3d at 856 (asking whether the agency has requested "vastly more information than it needs").

Here, the subpoena is of "such a sweeping nature" and "so unrelated to the matter properly under inquiry" that it cannot be deemed to be relevant or material to any of the three investigations IER is apparently pursuing. *See Morton Salt Co.,* 338 U.S. at 652–53.   Through its subpoena, IER has requested thousands of confidential records—including social security cards, passports, and birth certificates—for 3,500 SpaceX employees for every position across nine SpaceX locations nationwide.   Yet IER has made no attempt to justify why such wide-ranging subpoenas are justified. *See e.g.*, *EEOC v. McLane Co.*, No. CV-12-615-PHX-GMS, 2012 WL 1132758, at *5 (D. Ariz. Apr. 4, 2012)  ("The E.E.O.C.'s independent investigatory power is broad, but as it has defined its investigation, the genders, names, contact information, and social security numbers of individual employees are simply not relevant . . . .").   Its officious responses to date provide no explanation for why its current request for thousands of birth certificates, social security cards, and passports is specific and relevant to IER's purported investigations into SpaceX's hiring practices.   The Form I-9 specifically enumerates what documents may be used to verify a job applicant's I-9 status and SpaceX has already produced data showing which documents SpaceX actually accepted for each job applicant hired between June 2019 and August 2020.   IER has offered no reason why (for example) the actual birth certificates of SpaceX's janitorial staff are material and relevant to its investigation.

As noted, it appears that IER is simply using Mr. Hutter's lone complaint to launch an incredibly expansive investigation into SpaceX's employment practices.   That is improper.   Mr. Hutter's discrimination claim cannot serve as a bridge to a much larger

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA

investigation of unknown scope or purpose into SpaceX's employment practices, as the former is not reasonably relevant to the latter.

## V.  **CONCLUSION**

For the foregoing reasons, the government's application for an order requiring SpaceX to comply with its subpoenas should be denied.

Dated:  February 26, 2021

AKIN GUMP STRAUSS HAUER & FELD LLP

By:_____*/s/ Jessica H. Ro*_____
Jessica H. Ro
Charles F. Connolly *(Pro Hac Vice)*
James Tysse *(Pro Hac Vice)*
Joseph DiPiero *(Pro Hac Vice)*

Attorneys for Respondent
Space Exploration Technologies, Corp. d/b/a SPACEX

RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA