**AKIN GUMP STRAUSS HAUER & FELD LLP**
JESSICA H. RO (SBN 329737)
jro@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:   310.229.1000
Facsimile:   310.229.1001

**AKIN GUMP STRAUSS HAUER & FELD LLP**
CHARLES F. CONNOLLY *(Pro Hac Vice)*
JAMES E. TYSSE *(Pro Hac Vice)*
JOSEPH DIPIERO *(Pro Hac Vice)*
cconnolly@akingump.com
jtysse@akingump.com
jdipiero@akingump.com
2001 K Street, NW
Washington, DC 20006
Telephone:   202.887.4000
Facsimile:   202.887.4288

Attorneys for Respondent

SPACE EXPLORATION TECHNOLOGIES, d/b/a SPACEX

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>vs.<br><br>SPACE EXPLORATION TECHNOLOGIES CORP., d/b/a SPACEX,<br><br>Respondent. | Case No. 2:21-mc-00043-DMG-MRW<br><br>**DECLARATION OF CHRISTOPHER CARDACI IN SUPPORT OF RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA**<br><br>Date Action Filed: January 28, 2021<br>Judge: Hon. Michael R. Wilner<br><br>Date:  March 18, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 550<br><br>**HEARING VIA ZOOM** |

DECLARATION OF CHRISTOPHER CARDACI IN SUPPORT OF RESPONDENT'S OPPOSITION TO PETITIONER'S APPLICATION FOR ORDER TO COMPLY

# DECLARATION OF CHRISTOPHER CARDACI

I, Christopher Cardaci, do hereby declare and state as follows:

1. I am Vice President of Legal for Respondent Space Exploration Technologies Corp., d/b/a SpaceX ("SpaceX"). I submit this declaration in support of SpaceX's Opposition to Petitioner's Application for Order to Comply with Administrative Subpoena. Unless otherwise stated, the matters set forth herein are true and correct to the best of my own personal knowledge, and if called as a witness I could and would testify competently thereto.

2. In or about February 2020, SpaceX posted a job opening for a Technical Strategy Associate to the careers page of its website. This job post explained that the Technical Strategy Associate would be working on SpaceX's Starlink project, which aims to provide reliable, high-speed internet access on a global scale. In addition, the post notified candidates that applicants must be one of the following: a U.S. citizen, a lawful permanent resident of the U.S., a protected individual as defined by 8 U.S.C. § 1324b(a)(3), or a person eligible to obtain the required authorizations from the U.S. Department of State. The post also included a disclaimer emphasizing that SpaceX is an Equal Opportunity Employer, and that the company's hiring process would not be improperly influenced by any legally protected status, including, but not limited to, national origin. A true and correct copy of the job post is attached as Exhibit 1.

3. On or about February 21, 2020, the charging party, Fabian Hutter, submitted his application for the Technical Strategy Associate position. As part of the application, Mr. Hutter submitted his résumé, which stated that he was a dual Austrian and Canadian national. Mr. Hutter further represented in his application that he was a "U.S. lawful permanent resident" who was "authorized to work in the United States for any employer." It is my understanding that during his initial screen on March 10, 2020, a SpaceX recruiter asked Mr. Hutter to confirm his citizenship and immigration status, reiterating what was in the job posting—namely, that U.S. law requires Mr. Hutter to be

eligible to work in the U.S.—and on Mr. Hutter's résumé. It is also my understanding that Mr. Hutter responded by confirming that he was authorized to work in the United States, and that there was no further discussion of his citizenship or immigration status. Based on the initial phone screen, Mr. Hutter was invited to participate in the next phase of the hiring process, a technical phone screen. He was one of only seven applicants (out of more than 450 as of that time) to advance to the technical phone screen stage of the process.

4. On March 11, 2020, SpaceX employee Doug Tallmadge conducted the follow-up interview. It is my understanding that Mr. Tallmadge did not ask Mr. Hutter about, or otherwise raise in any way, Mr. Hutter's national origin, nationality, citizenship, or immigration status during this interview. Mr. Tallmadge recalls asking Mr. Hutter only two substantive questions. Mr. Tallmadge wrote a contemporaneous assessment reflecting that he was unimpressed with Mr. Hutter's answers. Neither Mr. Hutter nor any of the other candidates who received technical screening interviews advanced to the next round. As a result of his failure to advance through the entire hiring process, Mr. Hutter was never asked for, or required to provide, any employment-related documentation beyond the résumé he supplied with his application. SpaceX did not hire anyone into the Technical Strategy Associate position and has no plans to hire anyone for the role. True and correct copies of the Mr. Hutter's application and résumé, correspondence between the SpaceX recruiter and Mr. Hutter, and a copy of the feedback memo prepared by Doug Tallmadge are attached as Exhibit 2. Exhibit 2 has been redacted to remove personally identifiable and potentially sensitive information.

5. On June 8, 2020, the U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section ("IER") notified SpaceX that it had accepted a charge of employment discrimination from Mr. Hutter dated May 29, 2020. Mr. Hutter's charge alleged that SpaceX discriminated against him based on his citizenship status, in violation of the antidiscrimination provisions of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1324b.  As part of its notice, IER demanded voluminous information and records across 13 categories (and nearly 40 separate subcategories).

6. On July 8, 2020, SpaceX submitted its initial responses, which provided narrative responses to the questions posed by IER.  SpaceX also voluntarily provided a full explanation of, and evidence regarding, Mr. Hutter's application process and evaluation.  A true and correct copy of the July 8, 2020 response is attached as Exhibit 3.

7. On August 13, 2020, IER responded by notifying SpaceX that its production was "deficient in several regards."  IER requested that SpaceX supplement its responses, including by providing Forms I-9 for each individual employee hired or re-verified since June 1, 2019.  In addition, IER expanded its initial request by demanding additional categories of documents, including sample offer letters, training materials, and scripts used by recruiters during the initial screening process of job candidates.  IER also stated that it was investigating "possible use of unfair documentary practices based on citizenship status or national origin in the employment eligibility verification process in violation of 8 U.S.C. § 1324b(a)(6)."  A true and correct copy of IER's August 13, 2020 letter is attached as Exhibit 4.

8. Over the ensuing months, SpaceX continued to produce voluminous additional records in response to IER's requests, including an Excel chart containing Form I-9 and E-Verify data for the over 3,500 employees hired or re-verified between June 4, 2019 and August 17, 2020.  The Excel chart identifies the employees' first and last name, hire date, the documents used to verify the employees' I-9 status, and the last four digits of the employees' social security number.  A true and correct copy of the index of the materials that SpaceX has produced to date is attached as Exhibit 5.  In total, I estimate that SpaceX employees spent well over 100 hours, and provided over 1,000 pages of documents, responding to IER's information requests.  SpaceX also

sought to reach an accommodation with IER with respect to the remaining burdensome requests in its letter dated August 13, 2020. In particular, SpaceX sought to avoid the burden and expense of producing supporting I-9 documentation for over 3,500 SpaceX employees. IER rejected SpaceX's requests.

9. On October 5, 2020, IER secured an administrative subpoena from the Office of the Chief Administrative Hearing Officer ("OCAHO") pursuant to 8 U.S.C. § 1324(b)(2), requesting supporting I-9 documentation with respect to over 3,500 SpaceX employees. SpaceX again sought to reach an accommodation with IER and asked to more narrowly tailor the subpoena to address matters properly under investigation.

10. On October 20, 2020 IER informed SpaceX that it was not interested in any accommodation regarding the scope of its subpoena short of full compliance. In response, SpaceX filed a petition to revoke or modify the subpoena with OCAHO. Following OCAHO's denial of SpaceX's petition, SpaceX informed IER that it would not produce additional documents absent a court order.

11. Per the terms of IER's June 8, 2020 charging letter, IER had until September 28, 2020 to conduct its investigation into Mr. Hutter's discrimination charge, at which time it was required to notify SpaceX either that it was not pursuing charges or that it needed additional time to conduct its investigation into Mr. Hutter's complaint. *See* 28 C.F.R. § 44.303(a)-(b). To date, IER has provided no such notice to SpaceX, nor has it filed a complaint regarding Mr. Hutter's charge.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of February, 2021, in Washington, DC.

                                        */s/ Christopher Cardaci*
                                        Christopher Cardaci