**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Petitioner,<br><br>       v.<br><br>SPACE EXPLORATION TECHNOLOGIES CORP., d/b/a/ SPACEX,<br><br>              Respondent. | Case No. Misc. 21-43 DMG (MRW)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Dolly M. Gee, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**SUMMARY OF RECOMMENDATION**

The Immigrant and Employee Rights Section (IER) of the Department of Justice seeks enforcement of a subpoena issued to Space Exploration Technologies Corp. (SpaceX).

The Court (Magistrate Judge Wilner) concludes that IER demonstrated that its subpoena is relevant and enforceable to at least one ongoing investigation of the company. Further, there is an insufficient basis to conclude that the subpoena is overbroad or presents an undue burden to SpaceX. As a result, it is recommended that the application for an order compelling compliance with the subpoena be granted.

**FACTS AND PROCEDURAL HISTORY**

In May 2020, IER staff opened several investigations into SpaceX. One investigation involved an allegation that the company discriminated against a specific individual (identified in IER's records as "Charging Party") during the hiring process based on his citizenship status. (Docket # 1-3 at 2; # 19-5 at 2; # 20-1 at 2. The government also commenced investigations into whether SpaceX engaged in a broader pattern or practice of: (i) discrimination based on citizenship status; and (ii) unfair documentary practices during the employment eligibility verification / I-9 process based on citizenship status. (Docket # 19-5 at 2.)

In connection with these investigations, IER requested a variety of materials from SpaceX. Of relevance to this application, IER requested companywide I-9 data and documentation for newly-hired employees.[1] SpaceX produced an Excel spreadsheet containing Form I-9 data for all individuals hired nationwide between June 2019 and August 2020 (approximately 3,500 people). (Docket # 19 at 10-11.) SpaceX refused, however, to produce supporting documents (typically copies of passports, Social Security cards, driver's licenses, green cards, etc.). (Id.) The company

---

[1] Form I-9 records an employer's verification of the identity of an employee and her/his eligibility to work lawfully in the United States. (Docket # 1-1 at 6.)

2

also refused to comply with a subpoena for those materials that an administrative law judge later issued. (Docket # 1-1 at 5.)

This federal subpoena enforcement action followed. Among the arguments that SpaceX asserts for resisting the subpoena is the lack of apparent relevance between the broad I-9 document request and the investigation into the ill-fated hiring of the Charging Party. (Docket # 19 at 12-13.) Additionally, at the hearing on the application, SpaceX expressed skepticism at the "coincidence" that IER started multiple investigations into the company – including an I-9 overdocumentation investigation – on the same day in May 2020.

The Court offered the government an opportunity to make an <u>in camera</u> presentation outside the presence of SpaceX's lawyers to discuss the initiation and scope of IER's investigation into the company. IER declined.[2] (Docket # 21.)

**RELEVANT FEDERAL LAW**

The parties do not contest the governing legal standard for this Court to apply in evaluating a request to compel compliance with a federal administrative subpoena. (Docket # 1-1 at 10; # 19 at 11-12.) The key issues are "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence [sought by the subpoena] is relevant and material to the investigation." <u>EEOC v. Karuk Tribe Housing Auth.</u>, 260 F.3d 1071, 1076 (9th Cir. 2001) (citation omitted); <u>EEOC v. Federal Express Corp.</u>, 558 F.3d 842, 848 (9th Cir. 2009) (same). "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." <u>FDIC v. Garner</u>, 126 F.3d 1138, 1143 (9th Cir. 1997).

---

[2] For the benefit of the assigned district judge and to facilitate any appellate review, a copy of the IER letter is attached to this Report at Exhibit 1.

If a subpoena satisfies this test, compliance should be ordered "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." EEOC v. Children's Hospital Medical Center of Northern California, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc) (overruled on other grounds); EEOC v. VF Jeanswear LP, 769 F. App'x 477, 478 (9th Cir. 2019) (same).

The scope of a federal court's inquiry regarding enforcement of an administrative subpoena is "quite narrow." Children's Hospital, 719 F.2d at 1428. The Supreme Court has stated that a court's role is "a straightforward one":

> A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint[.] Rather, a district court should "satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge." [University of Pa. v. EEOC, 493 U.S. 182, 191 (1990).] It should do so cognizant of the "generous" construction that courts have given to the term "relevant." [EEOC v. Shell Oil Co., 466 U.S. 54, 68-69 (1984).]

McLane Co., Inc. v. EEOC, ___ U.S. ___, 137 S. Ct. 1159, 1165 (2017).

A district court's evaluation of the relevance requirement in a subpoena enforcement action can be a "fact-intensive, close call." Id. at 1168 (citation omitted). For this reason, a district court's decision whether to enforce or quash an administrative subpoena is "reviewed for abuse of discretion." Id. at 1164.

In making its determination regarding the potential relevance of information sought by a government subpoena, a district court "need not defer to the [agency's] decision on that score; it must simply answer the question cognizant of the agency's broad authority to seek and obtain evidence." Id. at 1169. The relevance of a subpoena is "generously construed," and entitles

4

IER to access evidence that touches on "the charge under investigation[.] That limitation on the [agency's] investigative authority is not especially constraining," and extends to "virtually any material that might cast light on the allegations against the employer." Shell Oil, 466 U.S. at 68-69.

Nevertheless, the Supreme Court reminds district courts that there are outer limits to a federal agency's broad investigative powers. A court may not construe the agency's investigative authority so broadly that the "relevance requirement" becomes "a nullity." Id. at 69. To that end, an administrative subpoena "may not be so broad as to be in the nature of a 'fishing expedition.'" Garner, 126 F.3d at 1146 (citation omitted); Krukhrov v. NLRB, No. Misc. 17-64 SJO (SSx), 2017 WL 7806597 at *5 (C.D. Cal. 2017) (same). Moreover, a district court may exercise its discretion to "make sure that [the agency] doesn't request vastly more information than it needs." Federal Express Corp., 558 F.3d at 856.

* * *

IER has a broad statutory and regulatory mandate to conduct its investigations. It may investigate a specific "charge received" from a complaining victim of, or witness to, unfair immigration-related employment discrimination. 8 U.S.C. § 1324b(d)(1). IER may also, "on [its] own initiative, conduct investigations respecting unfair immigration-related employment practices," including overdocumentation in the I-9 process. Id. IER need only have "reason to believe" that an employer is engaging in such misconduct to conduct such an investigation. 28 C.F.R. § 44.304(a).

**ANALYSIS**

A fair reading of SpaceX's papers suggests that the company does not seriously challenge the first two elements of the Karuk Tribe / FedEx test.

IER unquestionably has the authority to investigate allegations of misconduct in the employment and I-9 documentation processes. 8 U.S.C. § 1324b. According to correspondence sent to the company months ago, the IER investigations are focused on whether SpaceX has engaged such patterns or practices. Moreover, the sworn declaration of an IER lawyer tersely attests that the agency "had information supporting a reason to believe" that such violations occurred. (Docket # 20-1 at 2.) Although there's no meat on the bone, Ms. Sandoval's skeletal declaration is sufficient to establish that IER commenced a legitimate investigation on its own initiative (that is, not based on a charge presented by a specific party) regarding I-9 overdocumentation claims. 8 C.F.R. § 44.304(a); Garner, 126 F.3d at 1143.

The procedural-requirement prong has also been met; IER provided SpaceX with adequate notice of the existence of the investigation, the issuance of the subpoena, and the initiation of this action in federal court. (Docket # 1-1 at 12.) IER has satisfied those portions of the test for enforcement of the subpoena. Federal Express Corp., 558 F.3d at 848.

\* \* \*

The real dispute is clearly whether the subpoena for the I-9 backup documentation is relevant and material to any of IER's investigations. Applying the governing authority, this Court must undertake a "fact-intensive" consideration of the scope of the agency's inquiry and the documents sought by the subpoena. McLane, 137 S. Ct. at 1168. That consideration is hampered by the fact that the government declined – even in a non-public context, and with the consent of the company – to explain to the Court anything about the nature of its investigations into SpaceX.

At first blush, the IER subpoena does not appear to have any logical relationship to the investigation initiated regarding the company's decision

not to hire the Charging Party. Because SpaceX didn't hire him, it necessarily never received I-9 materials from him. The same holds true for other unsuccessful job applicants who may have been in the same situation as the Charging Party and were allegedly subject to a pattern of employment discrimination based on citizenship status. IER's request for I-9 documents therefore could only relate to materials submitted by people who <u>were</u> hired – and presumably were not the victims of citizenship-based discrimination. The government does not convincingly explain how these records could "cast light on" the company's allegedly illegal hiring practices. <u>Shell Oil</u>, 466 U.S. at 68-69. Directly put, IER hasn't remotely explained how I-9 records obtained during the "onboarding" process for hired employees could be probative of alleged misconduct of SpaceX either for refusing to hire the Charging Party or for engaging in a pattern of discriminating against non-U.S. citizens.[4]

IER is on firmer ground in asserting that the request for I-9 supporting materials is relevant to its investigation of potential overdocumentation violations under Section 1324b. It is, as the government points out, "hard to imagine information more relevant to an unfair documentary practices investigation [ ] than the Form I-9 supporting documentation of recent hires." (Docket # 1-1 at 14.) Further, the information that could potentially be derived from the raw supporting documentation goes well beyond the basic citizenship / employability data available from the face of the forms themselves. And, notwithstanding SpaceX's skepticism about the timing or

---

[4] IER fudges this distinction by asserting that its investigations seek information about "potentially discriminatory practices broadly occurring during the company's <u>screening and hiring processes</u>." (Docket # 20 at 16 (emphasis added).) The Court has no factual basis to evaluate this statement, nor can it make the leap to conclude that post-hiring documentation could plausibly shine any light on such pre-hiring events. <u>Garner</u>, 126 F.3d at 1146; <u>Krukhrov</u>, 2017 WL 7806597 at *5.

7

source of the unfair documentation investigation, IER has adequately demonstrated that it had a <u>prima facie</u> reason to open and conduct its independent inquiry.[5] <u>Garner</u>, 126 F.3d at 1143.

Finally, SpaceX has not convincingly carried its burden of proving that the IER subpoena is improperly overbroad. <u>Children's Hospital</u>, 719 F.2d at 1428. The company's complaint that it will be forced to produce "confidential records" for its workforce – "janitorial staff" included – is a non-starter. (Docket # 19 at 20.) The government may well be examining that too, and IER notes that the company uses uniform processes in its hiring / onboarding practices nationally. Moreover, SpaceX is required by law to obtain, maintain, and disclose those I-9 records on demand. (Docket # 1-1 at 14 (citing statute and regulations).) Yes, a full year of documentation for new hires at a growing national corporation is a big request. (Docket # 19-1 at 4.) But SpaceX has not demonstrated that IED seeks "vastly more information than it needs" to prove or disprove whether the company committed overdocumentation violations. <u>Federal Express Corp.</u>, 558 F.3d at 856.

---

[5] To that end, the government correctly distinguishes out-of-circuit judicial decisions cited in SpaceX's papers (<u>Burlington Northern Santa Fe R.R.</u>, <u>TriCore Reference Labs</u>, and <u>Royal Caribbean Cruises</u>) that limited the enforcement of EEOC subpoenas. (Docket # 20 at 15.) IER has considerably more robust statutory authority to open independent investigations than the EEOC staff. Opinions that criticize the EEOC for misinterpreting the scope of their investigations are of little import in the current context.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Judge issue an order: (1) accepting the findings and recommendations in this Report; (2) granting IER's application for an order compelling compliance with the subpoena; and (3) ordering SpaceX to comply with the subpoena.

Dated: March 29, 2021

_____
HON. MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE

cc: Acting U.S. Attorney Tracy L. Wilkison[6]

---

[6] As noted above and in an earlier order, a quick <u>in camera</u> discussion between the judge and the DOJ lawyers might have resolved this dispute between IER and SpaceX. (Docket # 21.) It also could have obviated the need to expend judicial resources in this busy federal court. Fed. R. Civ. P. 1 (litigants should seek "the just, speedy, and inexpensive determination of every action and proceeding"). Experienced local civil and criminal division Assistant U.S. Attorneys would likely have jumped at the chance to do so, even if such a discussion wasn't strictly required under any statute. In the interests of openness, I'll send a copy of this Report to our district's U.S. Attorney so she'll know how her out-of-town colleagues handled the matter.

**U.S. Department of Justice**

Civil Rights Division

---

*Immigrant and Employee Rights Section – 4CON*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*
*Main (202) 616-5594*
*Fax (202) 616-5509*

March 18, 2021

**BY E-MAIL**

The Honorable Michael R. Wilner
Magistrate Judge
United States District Court for the Central District of California
Roybal Federal Building and United States Courthouse
255 E. Temple St.,
Courtroom 550, 5th Floor
Los Angeles, CA, 900012
MRW_Chambers@cacd.uscourts.gov

    Re: *United States of America v. Space Exploration Technologies Corp., d/b/a SpaceX*, No. 2:21-mc-00043-DMG-MRW

Dear Judge Wilner:

  The United States, through the Immigrant and Employee Rights Section ("IER"), submits this letter in response to the Court's proposal to allow IER to augment the evidence provided in this proceeding through an *in-camera* review.  IER finds that it must respectfully decline the Court's offer of an *in-camera* review, because the submission of further information about the basis for IER's investigation of SpaceX is not necessary nor required for the resolution of the subpoena enforcement matter now before the Court.  No authority has been identified that requires IER to disclose the reasons that justify its decision to initiate an independent investigation under 8 U.S.C. §1324b.  *See* Reply Br. 12-13; *In Re Investigation of Space Exploration Technologies Corp. d/b/a SpaceX*, 14 OCAHO no. 1378 at 3, 2020 WL 7319344, at *2-3 (2020) (rejecting SpaceX's contention that "IER's refusal to explain its reason for investigating" rendered the Subpoena unenforceable); *see also In Re Investigation of Carolina Emps. Ass'n, Inc.*, 3 OCAHO 455, 611, 1992 WL 535611, at *5 (Sept. 17, 1992).  We do not construe the Court's proposed meeting to create such a requirement.  Accordingly, as IER's Application to Enforce the Subpoena satisfies all the applicable tests and standards governing the enforcement of administrative subpoenas, this Court should enforce the subpoena.

  However, to address this Court's interest, IER provides the following additional clarification about general considerations underlying its exercise of discretion to initiate an investigation.  Within ten days of determining that a charge submission provides all the information determined by the Attorney General as necessary to make a charge "complete," IER is statutorily required to notify the employer of the investigation.  *See* 8 U.S.C. §1324b(b)(1); 28 CFR § 44.301(a).  During this ten-day period, IER routinely engages in an initial investigation including but not limited to publicly available information about the company and/or additional

1

information from the Charging Party to better refine and focus IER's investigation.  It is not unusual for IER to obtain information during the ten-day period that supports a reason to believe that the employer may be engaging in systemic discrimination against individuals other than the Charging Party in violation of §1324b.  Consequently, IER regularly expands charge-based investigations to include investigation(s) of systemic discrimination ("pattern or practice" investigations) in violation to 8 U.S.C. § 1324b close in time to receiving a charge.  When such an expansion occurs, IER typically issues a single notice letter that notifies the respondent of both the charge and the pattern or practice investigation.

                Sincerely,

                Jennifer A. Deines
                Acting Deputy Special Counsel

                C. Sebastian Aloot
                Special Litigation Counsel

                _____

                Lisa R. Sandoval
                Sejal P. Jhaveri
                Trial Attorneys
                Attorneys for the United States

cc:    Chuck Connolly
        cconnolly@akingump.com

        Jessica Ro
        jro@akingump.com

        Counsel for SpaceX