1

2

3                          UNITED STATES DISTRICT COURT

4                          CENTRAL DISTRICT OF CALIFORNIA
                                  WESTERN DIVISION
5

6

7    UNITED STATES OF AMERICA,        )
                                      )
8                                     )
                  PETITIONER,         )
9                                     )
                  V.                  )   21-MC-00043-DMG(MRWX)
10                                    )
                                      )   MARCH 18, 2021
11   SPACE EXPLORATION TECHNOLOGIES   )
     CORP.,                           )   LOS ANGELES, CALIFORNIA
12                                    )
                  RESPONDENT.         )
13                                    )
                                      )
14   _____)

15                          TELEPHONIC STATUS CONFERENCE

16                      BEFORE THE HONORABLE MICHAEL WILNER
                           UNITED STATES MAGISTRATE JUDGE
17

18   APPEARANCES:              SEE NEXT PAGE

19   COURT REPORTER:           RECORDED; AT&T

20   COURTROOM DEPUTY:         VERONICA PIPER

21   TRANSCRIBER:              DOROTHY BABYKIN
                               COURTHOUSE SERVICES
22                             1218 VALEBROOK PLACE
                               GLENDORA, CALIFORNIA  91740
23                             (626) 963-0566

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1   APPEARANCES:

2   FOR THE PLAINTIFF UNITED STATES OF AMERICA:

3               U.S. DEPARTMENT OF JUSTICE
            CIVIL RIGHTS DIVISION
4               BY:  LISA RENEE SANDOVAL
                SEJAL JHAVERI
5               TRIAL ATTORNEYS
            950 PENNSYLVANIA AVENUE NW
6           WASHINGTON, DC   20530

7
    FOR THE DEFENDANT SPACE X:
8

9               AKIN GUMP STRAUSS HAUER & FELD LLP
            BY:  CHARLES CONNOLLY
10              JAMES TYSSE
                ATTORNEYS AT LAW
11          2001 K STREET NW
            WASHINGTON, DC  20006
12

13              AKIN GUMP STRAUSS HAUER & FELD LLP
            BY:  JESSICA H. RO
14              ATTORNEY AT LAW
            1999 AVENUE OF THE STARS
15          SUITE 600
            LOS ANGELES, CALIFORNIA  90067
16

17   ALSO TELEPHONICALLY PRESENT:

18
            CHRISTOPHER CARDACI
19          GENERAL COUNSEL
            SPACE X
20          1 ROCKET ROAD
            HAWTHORNE, CALIFORNIA  90250
21
            KAITLAN DAVIS
22          LAW CLERK

23

24

25

3

I N D E X

21-MC-00043-DMG(MRWX)                              MARCH 18, 2021

PROCEEDINGS:  TELEPHONIC STATUS CONFERENCE

4

```
1              LOS ANGELES, CALIFORNIA; MARCH 18, 2021

2              THE COURT:  ALL RIGHT.  GOOD MORNING.

3              THIS IS JUDGE MIKE WILNER.

4              THIS IS A HEARING IN THE UNITED STATES VERSUS

5    SPACE X.

6              OUR LOCAL CASE NUMBER IS MISCELLANEOUS

7    21-43-DMG(MRWX).

8              CAN I HAVE APPEARANCES FOR THE GOVERNMENT, PLEASE.

9              MS. SANDOVAL:  THIS IS LISA SANDOVAL WITH THE

10   IMMIGRANT AND EMPLOYEE RIGHTS SECTION.

11             AND I'M JOINED BY MY COLLEAGUES SEJAL JHAVERI, WHO

12   IS.

13             ANOTHER ATTORNEY IN THE SECTION, AS WELL AS KAITLAN

14   DAVIS, WHO IS A LAW CLERK.

15             THE COURT:  ALL RIGHT.  VERY GOOD.  WELCOME TO YOU.

16             AND FOR THE RESPONDING PARTY SPACE X.

17             MR. CONNOLLY:  GOOD MORNING, YOUR HONOR.

18             THIS IS CHUCK CONNOLLY WITH AKIN GUMP ON BEHALF OF

19   SPACE X.

20             I'M JOINED BY MY COLLEAGUES JAMES TYSSE AND JESSICA

21   RO.

22             YOUR HONOR, THERE'S ALSO A CHANCE THAT MR. --

23   CHRISTOPHER CARDACI, WHO IS GENERAL COUNSEL -- IN THE GENERAL

24   COUNSEL'S OFFICE AT SPACE X MAY BE JOINING AT SOME POINT.

25             THE COURT:  OKAY.
```

1      THANK YOU VERY MUCH FOR LETTING ME KNOW.

2      IT IS ALSO MY UNDERSTANDING THERE MAY BE MEMBERS OF

3  THE PUBLIC OR MEDIA WHO ARE ATTENDING TODAY BECAUSE THERE'S

4  BEEN SOME INTEREST.

5      ALL ARE WELCOME.  IT'S A PUBLIC COURT HEARING

6  NOTWITHSTANDING OUR COVID CRISIS AND SOME OF THE TECHNOLOGY

7  THAT WE'RE IMPLEMENTING HERE.

8      HOWEVER, IN FAIRNESS, I WANT TO REMIND EVERYBODY

9  INVOLVED THAT FEDERAL LAW AND THE LOCAL RULES OF THIS COURT

10  PROHIBITS ANY AUDIO OR VIDEO RECORDINGS OF FEDERAL COURT

11  PROCEEDINGS.

12      AND IT LOOKS LIKE MR. CARDACI IS JUST CHECKING IN

13  RIGHT NOW.  AND I THINK MY COURTROOM DEPUTY CLERK WILL HAVE HIM

14  ADMITTED.

15      SO, ALL RIGHT.  THE MATTER IS ON FOR A HEARING OF

16  SOME SORT ON THE APPLICATION OF THE GOVERNMENT TO ENFORCE AN

17  ADMINISTRATIVE SUBPOENA.

18      I TOOK A LOOK AT THE APPLICATION AND THE SUPPORTING

19  EXHIBITS, THE REPLY -- OR THE OPPOSITION SUBMISSION FROM SPACE

20  X AS WELL AS A REPLY FROM THE GOVERNMENT.

21      I THOUGHT YOUR PAPERS ON BOTH SIDES WERE VERY GOOD,

22  VERY HELPFUL, VERY FORCEFUL.  AND I HAVE A PRETTY GOOD HANDLE

23  ON THE FACTS HERE.

24      AND I'M NOT SURE I HAVE A LOT OF QUESTIONS.  I THINK

25  ONE OF THE THINGS THAT I'M TRYING TO GET SOME VISIBILITY ON

6

1    WITHOUT SUMMARIZING THE ENTIRE DISPUTE HERE -- BUT THIS IS

2    ESSENTIALLY A DISPUTE ABOUT PRODUCTION OF EMPLOYMENT

3    ELIGIBILITY VERIFICATION MATERIALS, THE SUPPORTING DOCUMENTS

4    BEHIND THE I-9 FORMS.

5            THE COMPANY HAS PROVIDED OTHER MATERIALS.  AND IT HAS

6    PROVIDED THE FORMS ITSELF BUT IS OPPOSING THE PRODUCTION OF

7    THOSE BACK-UP MATERIALS.

8            AND YOU FOLKS MAY BE FAR MORE EXPERIENCED IN THIS

9    FIELD OF LAW AND IN THIS PRACTICE, BUT AS I READ THE STATUTE,

10   AND AS I READ THE SUPPORTING REGULATIONS, IT'S MY UNDERSTANDING

11   THAT EEV MATERIALS ARE A DIFFERENT TYPE OF THING IN THE SENSE

12   THAT VARIOUS FEDERAL AGENCIES -- AND WHETHER IT'S ICE AS THE

13   SUCCESSOR TO INS OR IER AS A SUCCESSOR TO THE SPECIAL COUNSEL,

14   THEY JUST HAVE THE AUTHORITY TO COME IN AND TAKE THEM, TO

15   INSPECT THEM ON SOME AMOUNT OF NOTICE.

16           AND WHERE SPACE X RAISES ISSUES ABOUT LEGITIMACY OF

17   AN INVESTIGATION OR INFORMATION ABOUT POTENTIAL USE OR FOURTH

18   AMENDMENT CONCERNS AND SO FORTH, WHILE THAT MAY -- THAT MAY

19   HOLD TRUE FOR OTHER ISSUES AND OTHER AREAS, MY READING OF THE

20   STATUTE AND THE REGS IS THAT IF A FEDERAL AGENCY COMES IN --

21   AND AS I READ IT SUSPICIONLESS -- AND THEY WANT TO TAKE A LOOK

22   AT THESE MATERIALS, THEY ARE REQUIRED TO BE PRODUCED AND MADE

23   AVAILABLE WITHIN THREE DAYS.

24           MS. SANDOVAL AND MS. JHAVERI, AM I READING THE REGS

25   WRONG?

1          MS. SANDOVAL:  YOU ARE, YOUR HONOR.

2          THAT PARTICULAR PROVISION IS UNDER 1324(A).

3          THE COURT:  RIGHT.  THAT --

4          MS. SANDOVAL:  AND HERE WE OF COURSE ARE ENFORCING

5    1324(B).

6          AND WE ACTUALLY RAISED THAT STATUTORY PROVISION TO

7    INDICATE THE RELEVANCE OF THE DOCUMENTS AND, OF COURSE, TO SHOW

8    THAT WE'RE ENTITLED TO THEM.

9          WE DO ACKNOWLEDGE THAT WE HAVE CHOSEN TO PURSUE THE

10   DOCUMENTS UNDER 1324(B)(F)(2) PURSUANT TO OUR INVESTIGATION.

11         BUT THE GOVERNMENT ARGUES THAT WE -- THAT THE

12   SUBPOENA FOR THIS INFORMATION EASILY MEETS THE LEGAL TEST.

13         AND I CAN, OF COURSE, ELABORATE ON THAT.

14         THE COURT:  OKAY.

15         SO -- SO, THE GOVERNMENT IS NOT SAYING THAT THEY CAN

16   JUST COME IN AND TAKE IT UNDER 32 -- 1324(A) -- EVEN THOUGH

17   PROBLEMS THAT WOULD BE -- COULD BE DISCOVERED UNDER THAT COULD

18   BE AN UNFAIR EMPLOYMENT PRACTICE UNDER 1340 -- 1324(B).

19         MS. SANDOVAL:  TO BE CLEAR, YOUR HONOR, OUR OFFICE

20   COULD PURSUE THE INFORMATION UNDER 1324(A).

21         MY ONLY POINT IS THAT HERE WE HAVE CHOSEN TO PURSUE

22   IT IN A DIFFERENT MANNER.

23         AND WHY WE HAVE DONE SO IS PART OF OUR PRIVILEGE LAW

24   ENFORCEMENT TECHNIQUE.

25              (PAUSE IN PROCEEDINGS.)

8

1          THE COURT:  BECAUSE AS YOU DISCLOSED IN YOUR

2    DECLARATION AND IN THE LETTER THAT WAS SENT TO THE COMPANY,

3    THERE IS AN INVESTIGATION THAT IER IS CONDUCTING.  AND THAT'S

4    --

5          MS. SANDOVAL:  YES, YOUR HONOR.

6          THE COURT:  -- THE EXTENT -- AND THAT'S THE EXTENT OF

7    YOUR DISCLOSURE TO THE COMPANY.

8          MS. SANDOVAL:  YOUR HONOR, WE DID PROVIDE THE PROPER

9    NOTICE TO THE COMPANY IN JUNE 2020 OF BOTH --

10         THE COURT:  OKAY.

11         MS. SANDOVAL:  -- THE CHARGE AS WELL AS THE PATTERN

12   OR PRACTICE INVESTIGATION.

13         THE COURT:  RIGHT.  AND THAT'S YOUR STATEMENT THAT

14   THERE IS AN INVESTIGATION -- SEPARATE AND APART FROM THE

15   INDIVIDUAL CHARGING PARTY WHO HAS RAISED THAT COMPLAINT -- I

16   UNDERSTAND THAT.

17         OKAY.  AND, THEN, THE QUESTION AS TO WHETHER THESE

18   DOCUMENTS ARE RELEVANT TO THAT CHARGE IS ONE THING THAT WE CAN

19   TAKE UP.  BUT -- BUT, YOU KNOW, THE FACT THAT YOU HAVE

20   DISCLOSED THE EXISTENCE OF AN INVESTIGATION INTO EEV PRACTICES

21   ESSENTIALLY --

22         RIGHT?

23         AM I GETTING THE TERMS RIGHT?

24         MS. SANDOVAL:  YES, YOUR HONOR.  THE EMPLOYMENT

25   ELIGIBILITY VERIFICATION PROCESS, WE CAN ALSO CALL IT THE FORM

1  I-9 PROCESS COLLOQUIALLY.  YES.

2              THE COURT:  OKAY.

3              ALL RIGHT.  AND, SO, YOU HAVE -- YOU HAVE DECLARED TO

4  THE COURT THAT THERE IS SUCH AN INVESTIGATION, AND YOU GAVE

5  NOTICE OF THAT TO THE COMPANY IN -- WE'LL SAY MID-2020.

6              AND THAT'S ONE OF THE JUSTIFICATIONS FOR YOUR

7  CONTENTION THAT THE SUBPOENA IS PROPERLY ISSUED AND SEEKS THE

8  INFORMATION THAT'S RELEVANT AND MATERIAL TO AN INVESTIGATION.

9              MS. SANDOVAL:  YES, YOUR HONOR.

10             WE BELIEVE THAT WE HAVE AUTHORITY TO INVESTIGATE,

11 WHICH IS THE FIRST PART OF THE LEGAL TEST.

12             WE BELIEVE WE FOLLOWED ALL PROPER PROCEDURES FOR

13 OBTAINING, ISSUING AND SERVING THE SUBPOENA, WHICH IS PRONG 2

14 OF THE TEST.

15             AND WE VERY STRONGLY BELIEVE THAT THE FORM I-9

16 ATTACHMENTS ARE HIGHLY RELEVANT TO THE INVESTIGATION.  AND,

17 AGAIN, RELEVANCE IS A MINIMAL SHOWING.

18             SO, OUR MAIN POINT IS THAT WE EASILY MEET THE TEST

19 FOR ENFORCEMENT.

20             THE COURT:  AND THE SHOWING THAT YOU'VE MADE IS THERE

21 ARE THESE PIECES OF PAPER, THE I-9 ATTACHMENTS, THAT DISCUSS

22 WHAT A PERSON -- WHAT PUTATIVE EMPLOYEES OF THE COMPANY HAVE

23 DEMONSTRATED TO SHOW THE ELIGIBILITY TO WORK.

24             AND YOU HAVE REASON TO BELIEVE THAT THAT'S RELEVANT

25 TO THE INVESTIGATION.

10

1          AND THAT REASON IS PROTECTED BY THE LAW ENFORCEMENT

2     PRIVILEGE AT THIS STAGE.

3          MS. SANDOVAL:  YES, YOUR HONOR.

4          REGARDING THE PATTERN OR PRACTICE INVESTIGATION AND

5     OUR REASON TO BELIEVE, WE BELIEVE THAT GOES TO POTENTIALLY

6     PRONG 1.

7          AND FOR OUR PATTERN OR PRACTICE INVESTIGATION, WE DO

8     HAVE TO HAVE A REASON TO BELIEVE.  WE DO HAVE A REASON TO

9     BELIEVE AT THE TIME WE INITIATED THE INVESTIGATION, AS I STATED

10    IN MY DECLARATION.  AND THAT SATISFIES PRONG 1, YOUR HONOR.

11         THE COURT:  AND --

12         MS. SANDOVAL:  AND IN TERMS OF RELEVANCE, WE JUST

13    WANT TO MAKE CLEAR THAT WE BELIEVE THAT IS A SEPARATE ELEMENT

14    OF THE TEST.

15         THE COURT:  GOT IT.  GOT IT.

16         MS. SANDOVAL:  AND, AGAIN, I AM VERY HAPPY TO

17    ELABORATE ON SPECIFICALLY WHY WE BELIEVE THE FORM I-9

18    ATTACHMENTS ARE RELEVANT TO OUR -- BOTH OUR PATTERN OR PRACTICE

19    INVESTIGATION AS WELL AS THE INDIVIDUAL CHARGE.

20         THE COURT:  OKAY.

21         GO AHEAD.

22         MS. SANDOVAL:  SURE.

23         SO, THERE ARE SEVERAL REASONS THE FORM I-9

24    ATTACHMENTS ARE RELEVANT.  AGAIN, THIS IS A MINIMAL SHOWING.

25         AT THIS STAGE RELEVANCE IS VERY BROADLY CONSTRUED.

1   AND, IN PARTICULAR, RELATED TO THE -- AN INVESTIGATION BY AN

2   AGENCY RELEVANCE SPEAKS EVEN MORE BROADLY.

3          THE COURT:  NO, NO, THAT'S THE STANDARD.  YOU'RE

4   GOING TO EXPLAIN THE RELEVANCE NOW.

5          MS. SANDOVAL:  SURE.  OKAY.  SURE.

6          SO, AS I MENTIONED THERE ARE SEVERAL REASONS THAT WE

7   SET FORTH IN THE APPLICATION AS WELL AS OUR REPLY.  I WILL HONE

8   IN ON THE THREE MOST IMPORTANT REASONS.

9          THESE FORM I-9 ATTACHMENTS CONTAIN INFORMATION THAT

10  IS NOT OTHERWISE READILY AVAILABLE IN THE FORM 1-9 ITSELF

11  REGARDING ANY TRENDS OR PATTERNS OF AN EMPLOYER'S DOCUMENT

12  COLLECTION.  AND ONE EXAMPLE OF THAT IS WHEN AN EMPLOYER

13  REQUESTS MORE DOCUMENTS THAN ARE NECESSARY FOR THE EEV PROCESS,

14  THAT'S KNOWN AS "OVERDOCUMENTATION."  AND THAT COULD BE

15  CONSIDERED AN UNFAIR DOCUMENTARY PRACTICE.

16         AND AN EXAMPLE OF THAT IS -- FOR INSTANCE, SO, THERE

17  IS SECTION 1 OF THE FORM THAT THE EMPLOYEE FILLS OUT.

18         SECTION 2 OF THE FORM IS WHAT THE EMPLOYER COMPLETES

19  TO SHOW THAT IT DID REVIEW THE EMPLOYEE'S DOCUMENT.

20         AND THAT SECTION COULD SHOW THAT THE EMPLOYER

21  REVIEWED A PROPER AMOUNT OF DOCUMENTS -- THAT IS ONE DOCUMENT

22  FROM LIST 1, WHICH ESTABLISHES BOTH WORK AUTHORIZATION AND

23  IDENTITY, OR A COMBINATION OF A LIST B DOCUMENT, WHICH

24  ESTABLISHES IDENTITY; AND A LIST C DOCUMENT WHICH ESTABLISHES

25  WORK AUTHORIZATION.

1        SO, AGAIN, THE SECTION 2 MAY REFLECT A -- A PROPER

2    AMOUNT OF DOCUMENTS REVIEWED.

3        HOWEVER, LOOKING AT THE COPIES OF THE FORM I-9

4    ATTACHMENTS, IT'S POSSIBLE WE SEE THERE ARE MORE DOCUMENTS THAN

5    REFLECTED IN SECTION 2 -- FOR INSTANCE, A LIST A DOCUMENT, A

6    LIST B DOCUMENT AND A LIST C DOCUMENT.  AND THAT COULD -- AND I

7    EMPHASIZE COULD -- POTENTIALLY MEAN THAT THE EMPLOYER IS

8    REQUESTING THOSE DOCUMENTS BASED ON CITIZENSHIP STATUS.

9        AND THIS GOES TO THE HEART OF UNFAIR DOCUMENTARY

10    CLAIMS.

11        ANOTHER REASON THESE DOCUMENTS ARE RELEVANT IS THAT

12    IF WE DO DETECT A POTENTIAL OVERDOCUMENTATION, FOR EXAMPLE,

13    THAT WOULD ALLOW US TO IDENTIFY POTENTIAL VICTIMS AS WELL AS

14    WITNESSES.

15        AND THEN FINALLY A THIRD IMPORTANT REASON IS THAT

16    THESE DOCUMENTS ESTABLISH PROOF OF THE RATES AT WHICH SPACE X

17    IS HIRING NON-CITIZENS -- TO THE EXTENT THAT THE EMPLOYEES'

18    DOCUMENTS REFLECT AN IMMIGRATION STATUS.

19        AND THERE'S ANOTHER IMPORTANT --

20        THE COURT:  SO, HOW WOULD -- HOW WOULD THAT BE

21    DIFFERENT -- HOW WOULD THAT BE DIFFERENT THAN WHAT'S ATTACHED

22    ON THE I-9 ITSELF?

23        MS. SANDOVAL:  SURE.  THIS GOES TO THE FIRST POINT,

24    WHICH IS THAT SECTION 2 OF THE FORM I-9 MAY NOT BE ACCURATE.

25        WHAT IS ON SECTION -- WHAT IS IN SECTION 2 MAY NOT BE

13

1    REFLECTED IN THE FORM I-9 DOCUMENTS THEMSELVES.

2              THE COURT:  ALL RIGHT.

3              WHEN YOU SAID YOU WERE GOING TO DEMONSTRATE HOW THIS

4    WAS RELEVANT -- NOT JUST TO THE PATTERN AND PRACTICE

5    INVESTIGATION BUT TO THE SPECIFIC CHARGING PARTY INVESTIGATION.

6              MS. SANDOVAL:  SURE.

7              ONE OF THE IMPORTANT POINTS THERE, YOUR HONOR, IS

8    THAT THE -- THE HIRING PROCESS IS NOT JUST SCREENING AND

9    INTERVIEWING.  IT IS ALSO THE ON-BOARDING WHICH IS WHEN THE

10   FORM I-9 PROCESS OCCURS.

11             SO, IF THERE IS POTENTIAL DISCRIMINATION IN THE

12   SCREENING AND INTERVIEW PROCESS THERE COULD ALSO BE A SIMILAR

13   FORM OF DISCRIMINATION OCCURRING IN THE ON-BOARDING PROCESS.

14             SO, IN THAT WAY IT IS RELEVANT.

15             I ALSO WANT TO MAKE THE VERY IMPORTANT POINT THAT

16   SPACE X'S OWN FILINGS SHOW HOW RELEVANT THESE FORM I-9

17   ATTACHMENTS ARE BECAUSE SPACE X'S OWN FILINGS SHOW A POTENTIAL

18   PATTERN OR PRACTICE OF DISCRIMINATION.

19             AND, AGAIN, I EMPHASIZE WE'RE AT THE VERY BEGINNING

20   OF THIS INVESTIGATION.  THE PURPOSE IS TO DETERMINE WHETHER

21   DISCRIMINATION HAS OCCURRED.  BUT SPACE X'S OWN FILINGS SHOW

22   THAT IT EMPLOYS A UNIFIED HIRING PROCEDURE ACROSS ALL OF ITS

23   LOCATIONS WHICH WOULD MAKE A REQUEST FOR THOSE DOCUMENTS AT

24   DIFFERENT LOCATIONS RELEVANT.

25             SPACE X ADMITS THAT IT REQUESTS APPLICANTS TO

1    IDENTIFY THEIR IMMIGRATION STATUS AND CITIZENSHIP STATUS AND

2    THAT IT IN FACT DID SO RELATED TO CHARGING PARTY.

3            SPACE X ADMITS THAT IT ASKED CHARGING PARTY DURING

4    HIS INTERVIEW TO CONFIRM HIS IMMIGRATION AND CITIZENSHIP

5    STATUS.

6            AND FINALLY, YOUR HONOR, DOUG TALLMADGE'S FEEDBACK

7    MEMO FOR CHARGING PARTY REFLECTS -- THE ACCURATE FEEDBACK MEMO

8    THAT WE SUBMITTED REFLECTS THAT A HIRING MANAGER RELATED TO

9    CHARGING PARTY'S INTERVIEW STATED WORDS ALONG THE LINES OF NOT

10   A U.S. CITIZEN WHICH IS GOING TO MAKE IT DIFFICULT -- WHICH,

11   AGAIN, COULD REFLECT SYSTEMIC DISCRIMINATION.

12           SO, FOR ALL THESE REASONS THE FORM I-9 ATTACHMENTS

13   ARE HIGHLY RELEVANT.

14           AND, AGAIN, IT'S A MINIMAL SHOWING.  BUT HERE THE

15   FORM I-9 ATTACHMENTS HAPPEN TO BE HIGHLY RELEVANT.

16           THE COURT:  OKAY.  THANK YOU.

17           ALL RIGHT.  MR. CONNOLLY.

18           MR. CONNOLLY:  YES.  THERE'S A LOT THERE TO ADDRESS,

19   YOUR HONOR.

20           SO, LET ME -- I THINK IT'S VERY IMPORTANT TO

21   DISTINGUISH WHICH INVESTIGATION WE'RE DISCUSSING.

22           SO, IF I COULD JUST START THERE WHICH IS SOMETHING

23   THAT YOUR HONOR ASKED THE GOVERNMENT ABOUT JUST A MINUTE AGO.

24           IT WAS NICE TO HEAR THE GOVERNMENT CONCEDE -- I THINK

25   FOR THE FIRST TIME SINCE IN THE REPLY BRIEF THEY SAID THAT WE

1   FABRICATED IT -- THAT IN ORDER FOR THEM TO BRING AN

2   INVESTIGATION ON THEIR OWN INITIATIVE THEY NEED A REASONABLE

3   BASIS TO BELIEVE THAT THERE'S A VIOLATION.  THEY CAN'T JUST

4   MAKE IT UP.  THEY CAN'T WAKE UP SOMEDAY AND SAID I HAD EGGS FOR

5   BREAKFAST.  I'M GOING TO SEND A SUBPOENA TO SPACE X.

6          IN THEIR REPLY BRIEF THEY SAID THAT'S A FABRICATED

7   STANDARD.  IT IS NOT.  IT'S EXPLICITLY SET OUT IN THE DOJ'S OWN

8   REGULATIONS REGARDING OWN INITIATIVE INVESTIGATION WHICH I NOTE

9   IER CITES AND RELIES ON IN THE REPLY BRIEF.

10         THE COURT:  AND THEY SAY THAT THEY'VE COMPLIED WITH

11   THAT.

12         MR. CONNOLLY:  WELL, LET'S TALK ABOUT THAT IN A

13   MOMENT, BUT I WANT TO DISTINGUISH BETWEEN THAT --

14         THE COURT:  OKAY.

15         MR. CONNOLLY:  -- BECAUSE IT'S A VERY DIFFERENT

16   STANDARD FROM THEIR DUTY AND OBLIGATION TO INVESTIGATE A

17   CHARGING PARTY'S COMPLAINT.

18         WHEN THEY GET A CHARGING PARTY'S COMPLAINT THAT IS --

19         THE COURT:  I'D RATHER -- I'D RATHER FOCUS -- I'D

20   RATHER FOCUS ON THE PATTERN AND PRACTICE INVESTIGATION BECAUSE

21   IT'S POTENTIALLY MUCH BROADER AND POTENTIALLY RELATES DIRECTLY

22   TO THESE MATERIALS.

23         I -- I TAKE YOUR POINT THAT COMPANY-WIDE I-9-BACKING

24   DOCUMENTS MAY BE FAR AFIELD FROM THE CHARGING PARTY'S

25   ALLEGATION.  AND I TAKE MS. SANDOVAL'S POINT THAT IT'S A BROAD

16

1    STANDARD.  SO, LET'S JUST FOCUS ON THE EASY STUFF.

2              MR. CONNOLLY:  SURE.

3              THE COURT:  I HAVE A GOVERNMENT LAWYER WHO HAS SWORN

4    TO ME UNDER PENALTY OF PERJURY THAT THERE IS AN INVESTIGATION

5    GOING ON.  THIS MATERIAL IS RELEVANT.

6              WHERE DO WE GO?

7              MR. CONNOLLY:  WELL, LET'S START WITH THAT.

8              THE COURT:  AND I -- AND I -- I ACCEPT -- I ACCEPT

9    YOUR OBSERVATION, BY THE WAY, THAT GETTING IT IN THE REPLY

10   SUBMISSION IN A DECLARATION -- ALTHOUGH I DID SEE THE ORIGINAL

11   LETTER THAT THE GOVERNMENT SENT OVER, BUT -- BUT NOW THAT WE

12   HAVE THIS HERE, HOW DOES THIS CHANGE THE STATE OF PLAY?

13             MR. CONNOLLY:  WE DON'T THINK IT DOES AT ALL, YOUR

14   HONOR, FOR --

15             THE COURT:  OKAY.

16             MR. CONNOLLY:  -- A COUPLE OF REASONS.

17             FIRST, THE GOVERNMENT OPENED THREE INVESTIGATIONS ON

18   THE EXACT SAME DAY.  THIS IS PARAGRAPH 6 OF THEIR APPLICATION.

19             THERE'S THE CHARGING PARTY INVESTIGATION.  AND THERE

20   ARE TWO SEPARATE WHAT I'LL CALL SORT OF PATTERN AND PRACTICE

21   INVESTIGATIONS.  ONE RELATES TO A PATTERN AND PRACTICE

22   REGARDING POTENTIAL DISCRIMINATION BASED ON CITIZENSHIP STATUS.

23             THE COURT:  SO WHEN YOU SAY "PARAGRAPH 6 OF THE

24   APPLICATION," WHAT ARE YOU TALKING -- WHERE ARE YOU -- WHERE

25   ARE YOU REFERRING?

1            MR. CONNOLLY:  THE VERY FIRST FILING, YOUR HONOR.  I

2   CAN PULL IT UP.  IT'S PART OF THEIR BRIEF.  THEY HAD AN

3   APPLICATION THAT WAS BEFORE THEIR INITIAL BRIEF IN THIS COURT.

4            I CAN PULL IF UP IF YOU WANT TO --

5            THE COURT:  OH, I'M SORRY.  I HAVE -- I HAVE THE -- I

6   HAVE THE MEMORANDUM -- SORRY -- WHICH I CONSIDERED THE

7   APPLICATION.  I SEE.

8            ALL RIGHT.

9            MR. CONNOLLY:  AND BEFORE IT'S CALLED "THE IER

10  APPLICATION" IN PARAGRAPH 6.  THEY SPECIFICALLY SET OUT THAT

11  THERE ARE THREE SEPARATE INVESTIGATIONS.

12           CHARGING PARTY INVESTIGATION.

13           LET'S CALL THE SECOND ONE THE PATTERN AND PRACTICE

14  INVESTIGATION BASED ON CITIZENSHIP DISCRIMINATION.

15           AND THE THIRD ONE IS WHAT I'VE CALLED -- AND I THINK

16  THEY REFER TO IN THEIR PAPERS AS THE "UNFAIR DOCUMENTARY

17  PRACTICES INVESTIGATION."  I THINK MS. SANDOVAL JUST REFERRED

18  TO THAT AS THE EEV DOCUMENTS.  ESSENTIALLY THE THING THAT IS

19  ATTACHED TO THE I-9 FORMS WHICH IS OF SUCH INTEREST.

20           NOTABLY THE GOVERNMENT HAS SAID TO -- TO THE ALJ AND

21  OTHERS THAT THE SUBPOENA IS PARTICULARLY RELEVANT TO THE UNFAIR

22  DOCUMENTARY PRACTICES INVESTIGATION.

23           THE GOVERNMENT CONCEDES NOW FOR THE FIRST TIME THAT

24  THEY NEED A REASONABLE BASIS TO OPEN THEIR INVESTIGATIONS.

25           AT THE TIME ON MAY 29TH, THE EXACT SAME DAY THEY

18

1   RECEIVED THE CHARGING PARTY'S COMPLAINT, THEY OPENED ALL THREE

2   INVESTIGATIONS.

3         SINCE THAT TIME THEY HAVE HAD MULTIPLE, MULTIPLE,

4   MULTIPLE OPPORTUNITIES TO SAY WE HAD A REASONABLE BASIS TO OPEN

5   THE PATTERN AND PRACTICE AND UNFAIR DOCUMENTARY PRACTICES

6   INVESTIGATIONS.

7         UNTIL THE REPLY -- AND I'LL COME TO THAT IN A MOMENT

8   -- THEY HAVE NEVER SAID THAT.  THEY HAVE TAUTOLOGICALLY ARGUED

9    --

10        THE COURT:  ARE THEY -- ARE THEY OBLIGED TO --

11        MR. CONNOLLY:  -- IN ALL THEIR BRIEFING --

12        THE COURT:  ARE THEY OBLIGED TO MAKE THAT

13  REPRESENTATION TO YOU, MR. CONNOLLY?

14        MR. CONNOLLY:  I THINK THEY ARE, YOUR HONOR.

15        WELL, THEY'RE OBLIGED TO MAKE IT TO YOU OR THE ALJ

16  WHEN THEY'RE CHALLENGED ON IT, YOUR HONOR.

17        THE COURT:  OKAY.

18        THEY HAVE --

19        MR. CONNOLLY:  THIS IS NOT A MATTER OF WHAT THEY SAID

20  TO US.

21        THE COURT:  OKAY.  OKAY.  OKAY.  THEY HAVE.

22        MR. CONNOLLY:  BUT, YOUR HONOR, THEY PREVIOUSLY MADE

23  REPRESENTATIONS TO US AND TO THE ALJ THAT THEY HADN'T MADE A

24  REASONABLE BASIS DETERMINATION YET.  AND THERE'S NO SUPPORT.

25  AND IT DEFIES CREDIBILITY.  IT DEFIES LOGIC.

1          AND THE VERY DAY THEY HAPPENED TO RECEIVE THE

2    CHARGING PARTY'S COMPLAINT THEY JUST HAPPENED TO HAVE

3    INDEPENDENT REASONABLE BASIS FOR A MUCH BROADER PATTERN AND

4    PRACTICE INVESTIGATION AND AN UNFAIR DOCUMENTARY PRACTICE

5    INVESTIGATION WHEN THE CHARGING PARTY GOT NOWHERE CLOSE TO THAT

6    DOCUMENTARY STAGE OF THE PRACTICE.

7          NOW, I'LL RETURN IN A MOMENT TO --

8          THE COURT:  SO, YOU JUST DON'T BELIEVE THEM?

9          MR. CONNOLLY:  NO.  WE -- NOT ONLY WE DON'T BELIEVE

10   THEM, YOUR HONOR, WE'RE NOT BELIEVING THEM JUST BECAUSE WE

11   DON'T BELIEVE THEM.  THEY MADE REPRESENTATIONS AS I'VE SAID

12   THAT THEY HADN'T HAD IT.

13         THE COURT:  WHAT ARE YOU REFERRING TO NOW, MR.

14   CONNOLLY?

15         MR. CONNOLLY:  LET ME PULL UP MY NOTES.

16         THE REPRESENTATIONS WERE IN THE SEPTEMBER 28TH LETTER

17   THAT THEY ATTACHED TO THE -- TO THE REPLY BRIEF WHERE THEY SAY:

18         "AT THIS POINT IER HAS NOT YET DETERMINED WHETHER

19          THERE IS REASONABLE CAUSE TO BELIEVE A VIOLATION OF

20          1324(B) HAS OCCURRED."

21         AND IN THEIR FILING WITH THE ALJ, THEY SPECIFICALLY

22   SAID:

23         "IER NEEDS TO REVIEW SPACE X'S FORM 1-9 SUPPORTING

24          DOCUMENTS TO DETERMINE WHETHER THERE'S A REASONABLE

25          CAUSE TO BELIEVE SPACE X HAS COMMITTED VIOLATIONS."

1          THAT'S A PERFECTLY APPROPRIATE DISCLOSURE WHEN WE'RE

2     TALKING ABOUT INVESTIGATING THE CHARGING PARTY.

3          IT IS NOT --

4          THE COURT:  HANG ON JUST ONE SECOND.

5          MR. CONNOLLY:  -- OR IF IT HASN'T --

6          THE COURT:  HANG ON A SECOND, MR. CONNOLLY.

7          MS. SANDOVAL IS ACHING TO TELL ME WHAT THE SEPTEMBER

8     28TH, 2020 LETTER MEANS.

9          MS. SANDOVAL:  YES.  YES, YOUR HONOR.

10          I BELIEVE WITH ALL DUE RESPECT TO MR. CONNOLLY -- IS

11     CONFUSING WHAT IS KNOWN AS "REASONABLE CAUSE" VERSUS THE

12     REASONABLE BASIS FOR THE PATTERN OR PRACTICE INVESTIGATION.

13          REASONABLE CAUSE IS OUR OFFICE'S CONCLUSION WHETHER

14     OR NOT DISCRIMINATION OCCURRED.

15          AND, AGAIN, I EMPHASIZE WE HAVE NOT REACHED THAT

16     DETERMINATION.  THAT'S THE VERY PURPOSE OF THE INVESTIGATION.

17     SO, WE STAND BY THAT FACT --

18          THE COURT:   WHAT IS REASONABLE -- WHAT IS REASONABLE

19     CAUSE TO BELIEVE A VIOLATION OCCURRED MEAN? -- THAT'S A PHRASE

20     FROM YOUR LETTER.

21          MS. SANDOVAL:  THAT MEANS THAT WE'VE COMPLETED THE

22     INVESTIGATION.

23          WE'VE --

24          THE COURT:  AND YOU'RE READY --

25          MS. SANDOVAL:  -- EVALUATED --

1           THE COURT:  AND YOU'RE READY -- AND YOU'RE READY TO

2   CHARGE.

3           MS. SANDOVAL:  ABSOLUTELY, YOUR HONOR.  YES.

4           THE COURT:  OKAY.

5           MS. SANDOVAL:  CHARGE OR NOT CHARGE, YOUR HONOR,

6   BECAUSE SOMETIMES WE FIND THERE IS NO DISCRIMINATION.  AND WE

7   NOTIFY THE EMPLOYER OF THAT.

8           THE COURT:  ALL RIGHT.  BUT IF YOU -- BUT IF YOU FIND

9   REASONABLE CAUSE TO BELIEVE A VIOLATION --

10          MS. SANDOVAL:  TRUE.

11          THE COURT:  -- OCCURRED, YOU GO TO COURT.

12          MS. SANDOVAL:  YES, SIR.  YES.  YES, YOUR HONOR.

13          THE COURT:  YOU'RE -- AND THAT'S A DIFFERENT STANDARD

14  AND A DIFFERENT PROCESS YOU'RE TELLING ME THAN HAVING A

15  REASONABLE BASIS TO INITIATE AN INVESTIGATION?

16          MS. SANDOVAL:  YES, YOUR HONOR.

17          THE COURT:  OKAY.

18          MS. SANDOVAL:  THE REASONABLE BASIS IS JUST HAVING

19  INFORMATION TO SUPPORT A BELIEF THAT DISCRIMINATION COULD BE

20  OCCURRING.

21          THE COURT:  RIGHT.  AND THAT'S INFORMATION --

22          MS. SANDOVAL:  AND AGAIN --

23          THE COURT:  AND THAT'S INFORMATION THAT YOU BELIEVE

24  IS PROTECTED FROM DISCLOSURE TO THE PARTY YOU'RE INVESTIGATING.

25  AND THAT'S WHY YOU'VE NOT PUT THOSE CARDS ON THE TABLE --

1          MS. SANDOVAL:  YES, YOUR HONOR.

2          THE COURT:  -- WITH MR. CONNOLLY.

3          MS. SANDOVAL:  YES, YOUR HONOR.

4          THE COURT:  OKAY.

5          WOULD THE GOVERNMENT BE PREPARED TO GO IN CAMERA WITH

6     THIS COURT AND BRIEFLY SUMMARIZE THAT INFORMATION?

7          MS. SANDOVAL:  WE WOULD, YOU KNOW, CHECK WITH OUR

8     CLIENT.  BUT IF YOUR HONOR BELIEVES THAT THAT WERE NECESSARY,

9     THEN, I CAN SAY THAT I THINK THAT THAT'S VERY LIKELY THAT WE

10    WOULD DO SO -- BE WILLING TO --

11         THE COURT:  WHICH OCCURS ALL THE TIME --

12         MS. SANDOVAL:  SURE.

13         THE COURT:  -- IN THIS COURT'S CRIMINAL AND CIVIL

14    PRACTICE.  OKAY.

15         WELL, MR. CONNOLLY, YOU'VE GOT AN EXPLANATION FROM A

16    JUSTICE DEPARTMENT LAWYER ABOUT THE REASONABLE CAUSE LETTER.

17         MR. CONNOLLY:  WELL, YOUR HONOR --

18         THE COURT:  CAN YOU --

19         MR. CONNOLLY:  -- THOSE STANDARDS ARE SET FORTH IN

20    THE STATUTE AND THE REGULATIONS.

21         WHATEVER THE DIFFERENCE BETWEEN REASONABLE CAUSE TO

22    BELIEVE AND REASONABLE BELIEF, REASONABLE BELIEF IS STILL A

23    THRESHOLD AND A HURDLE THAT WE DON'T BELIEVE THEY'VE MET.

24         AND, AGAIN, THE FACT THEY OPENED ALL THREE

25    INVESTIGATIONS ON THE EXACT SAME DAY STRIKES US AS, YOU KNOW,

```
 1    JUST INCREDIBLY COINCIDENTAL.

 2              THE COURT:  WELL -- WELL -- OKAY.  OKAY.

 3              MR. CONNOLLY:  AND, AGAIN, THEY HAD --

 4              THE COURT:  NO, I GOT IT.  I GOT IT.

 5              THE WAY THAT WAS PRESENTED TO YOU RAISES SOME FLAGS.

 6              AND ONE OF THE REASONS I'M TRYING TO GET OUT IN FRONT

 7    OF THIS AND ASK THE GOVERNMENT ABOUT PERHAPS ME TAKING AN IN

 8    CAMERA PRESENTATION -- THAT'S JUST PRIVATE IN CHAMBERS -- BUT,

 9    YOU KNOW, I -- I WOULD RECORD IT FOR POTENTIAL APPELLATE

10    REVIEW.

11              BUT I GET THAT IT WAS -- ARE YOU INTERESTED IN ME

12    HAVING THAT REVIEW, MR. CONNOLLY?

13              MR. CONNOLLY:  YES, YOUR HONOR.

14              THE COURT:  OKAY.

15              MR. CONNOLLY:  WE DO THINK -- WE DO THINK -- WELL, WE

16    ARE, YOUR HONOR.

17              WE ALSO THINK IT'S IMPORTANT, VERY IMPORTANT, TO FIND

18    OUT WHEN THIS ALLEGED REASONABLE BASIS WAS OBTAINED.

19              YOU CAN'T GO ON A FISHING EXPEDITION AND THEN CATCH A

20    PLANKTON AND THEN SAY THE PLANKTON JUSTIFIES THE FISHING

21    EXPEDITION.

22              FOR EXAMPLE, THE POINTS THAT THE GOVERNMENT RAISES IN

23    THEIR REPLY BRIEF --

24              THE COURT:  I'M SORRY.  I WAS JUST SMILING AS I WAS

25    WRITING FISHING EXPEDITION -- AND THEN DIFFERENT FISH CAME UP
```

1   IN MY MIND.

2            SO --

3            MR. CONNOLLY:  (LAUGHING.)

4            THE COURT:  OKAY.  KEEP GOING.

5            MR. CONNOLLY:  I THINK THE PLANKTON IS THE SMALLEST,

6   WHICH IS WHY I WENT WITH IT, YOUR HONOR.

7            THE COURT:  THAT'S RIGHT.

8            MR. CONNOLLY:  FIRST OF ALL, THE GOVERNMENT IS WRONG

9   -- AND I NEED TO ADDRESS IT BECAUSE THERE'S AN INSINUATION

10  THAT WE DID NOT PROVIDE AN ACCURATE SCORE CARD IN OUR BRIEFS TO

11  THE COURT AND TO THE GOVERNMENT.  IT JUST MISUNDERSTANDS WHAT A

12  SCORE CARD IS.  WE NEVER REPRESENTED IT WAS THE FULL ONE.

13           IT WAS THE DOCUMENTS, THE -- WHAT'S CALLED "THE

14  APPLICATION KIT," WHICH ARE THE ONLINE FORMS FILLED OUT BY THE

15  CHARGING PARTY --

16           THE COURT:  I DON'T CARE ABOUT THE MOTIVATION.

17           MR. CONNOLLY:  OKAY.

18           THE COURT:  I MEAN, THAT'S A SECONDARY PIECE OF PAPER

19  HERE.

20           MR. CONNOLLY:  SO, LET'S JUST TALK ABOUT TIMING, YOUR

21  HONOR.

22           THE COURT:  I MEAN, IT WAS -- IT WAS -- IT WAS

23  INTERESTING THAT THE ONE PAGE YOU DIDN'T GIVE US WAS THE ONE

24  THAT SET THE GOVERNMENT OFF, BUT -- BUT THAT'S NOT WHY WE'RE

25  HERE.

1          GO AHEAD.

2          MR. CONNOLLY:  SO, YOUR HONOR --

3          SO, THE TIMING ISSUE IS WE DO NOT BELIEVE THAT THE

4    DOCUMENTS THEY OBTAINED POST MAY 29TH WHEN THEY'VE TOLD US IN

5    THIS COURT THAT THEY OPENED THEIR THREE INVESTIGATIONS CAN

6    JUSTIFY THE REASONABLE BASIS FOR THE INVESTIGATIONS IN THE

7    FIRST PLACE.

8          AND TO BRING THIS FULL CIRCLE, IF THE PATTERN AND

9    PRACTICE INVESTIGATION AND THE UNFAIR DOCUMENT INVESTIGATIONS

10   ARE WITHOUT REASONABLE CAUSE, THEY'RE IMPROPER INVESTIGATIONS.

11         AND THEY CERTAINLY CAN'T JUSTIFY THE SUBPOENA OR THE

12   DOCUMENTS THEY REQUEST TO IT -- WHICH BRINGS US BACK TO YOUR

13   INITIAL QUESTION WHICH IS THERE CERTAINLY IS NO RELEVANCE TO

14   THESE DOCUMENTS TO THE INDIVIDUAL CHARGING PARTY'S COMPLAINT.

15         AND THE GOVERNMENT HAS GONE OUT OF ITS WAY TO

16   DISTINGUISH THE CHARGING PARTY COMPLAINT FROM THE PATTERN AND

17   PRACTICE AND UNFAIR DOCUMENTS.

18         THE COURT:  OKAY.

19         BUT -- BUT YOU WILL AGREE THAT IF THERE IS A

20   REASONABLE BASIS -- NOT REASONABLE CAUSE TO BELIEVE A VIOLATION

21   OCCURRED BUT A REASONABLE BASIS TO INVESTIGATE I-9 PRACTICES AT

22   THE COMPANY, IF -- IF THE GOVERNMENT CAN -- CAN DEMONSTRATE

23   THAT, THEN, THE SUBPOENA WAS PROPERLY ISSUED.  AND THE

24   MATERIALS ARE IN ALL LIKELIHOOD RELEVANT.

25         MR. CONNOLLY:  THEY MAY STILL BE OVERBROAD, YOUR

1 HONOR.  BUT CORRECT.  YES.

2          IF THIS COURT IS -- IF THIS COURT BELIEVES THERE'S A

3 REASONABLE BASIS FOR AN UNFAIR DOCUMENT INVESTIGATION IN A

4 PATTERN AND PRACTICE, WE'RE NOT GOING TO ARGUE THAT THE BACKUPS

5 TO THE I-9 ARE IRRELEVANT TO THAT.

6          THE COURT:  OKAY.

7          MR. CONNOLLY:  THEY MAY BE OVERBROAD, DEPENDING ON

8 WHAT THAT REASONABLE BASIS IS.  BUT RELEVANCE I THINK WOULD BE

9 MET.

10          AGAIN, THAT'S WHY WE CHALLENGED SORT OF ONE IN THREE

11 IN THE TEST THAT MS. SANDOVAL SET FORTH IN OUR OPPOSITION.

12          THE COURT:  OKAY.  BUT -- BUT OVERBREADTH, I

13 UNDERSTOOD YOUR --

14          (PAUSE IN PROCEEDINGS.)

15          THE COURT:  I MEAN, YOUR OVERBREADTH IS THE ONE YEAR

16 OF DOCUMENTS THEY WANT.  INCLUDES THE JANITORS.  IT INCLUDES

17 PEOPLE IN DIFFERENT OFFICES NATIONWIDE TO WHICH THE GOVERNMENT

18 SAYS THERE'S REALLY NO WAY TO DISTINGUISH THIS BECAUSE OF HOW

19 -- HOW THE ONBOARDING PROCESS GOES FORWARD, IF I'M -- IF I'M

20 UNDERSTANDING THE BACK AND FORTH CORRECTLY.

21          MR. CONNOLLY:  THAT'S CORRECT, YOUR HONOR.

22          AND I DON'T WANT TO GET INTO A FACTUAL DEBATE, BUT I

23 DID NOTE THAT --

24          THE COURT:  OKAY.  OKAY.

25          MR. CONNOLLY:  -- SPACE X HIGHLIGHTED THAT THE

1  QUESTIONS ABOUT CITIZENSHIP WERE IN THE JOB POSTING BECAUSE IT

2  WAS REQUIRED BY LAW.

3          THIS COMPANY HAS --

4          MS. SANDOVAL:  YOUR HONOR --

5          MR. CONNOLLY:  -- CLASSIFIED STUFF EVERYWHERE AND

6  ITAR STUFF EVERYWHERE.  WE FLAGGED THAT FOR THEM.  THAT'S NOT

7  HIDDEN ANYWHERE.

8          SO, THE IDEA THAT THE CHARGING PARTY WHO DISCLOSED ON

9  HIS ONLINE FORM THAT HE WAS AN LPR AND NOT A U.S. CITIZEN WAS

10  ASKED TO CONFIRM INFORMATION ESSENTIALLY ON HIS RESUME IS NOT

11  SHOCKING.  AND HE GOT INTERVIEWS AFTER THAT FACT.

12          THE COURT:  OKAY.  IT'S --

13          MR. CONNOLLY:  SO, I KNOW THIS IS NOT THE TIME FOR

14  THE FACTUAL DISPUTE BUT --

15          THE COURT:  YEAH.  AND IT'S DIFFICULT --

16          MR. CONNOLLY:  -- THE ASPECT --

17          THE COURT:  IT'S DIFFICULT -- IT'S DIFFICULT FOR ME

18  TO UNDERSTAND OR TO TAKE UP THE MERITS OF SOME OF THESE THINGS.

19          I MEAN OBVIOUSLY -- OBVIOUSLY THE COMPANY HAS NO

20  INTEREST IN HIRING SOMEBODY OR GOING THROUGH THE PROCESS OF

21  HIRING SOMEBODY WHO IS NOT ELIGIBLE TO BE HIRED BY THE COMPANY.

22          AND I'M NOT SURE THAT THE GOVERNMENT WOULD SAY THAT

23  -- THAT INQUIRY OR POSTING THAT, YOU KNOW, PEOPLE WHO ARE

24  ELIGIBLE TO WORK IN THE UNITED STATES CAN APPLY BUT NOBODY

25  ELSE.

1          YOU KNOW, IS THAT A VIOLATIVE COMMENT, MS. SANDOVAL,

2     POTENTIALLY?

3          MS. SANDOVAL:  WE AGREE WITH YOUR HONOR.  THIS GETS

4     INTO THE MERITS AND IS AN ENTIRELY INAPPROPRIATE CONVERSATION

5     FOR AN ENFORCE- -- AN ENFORCEMENT OF A SUBPOENA PROCEEDING.

6          SO, THE GOVERNMENT'S -- OR I'M SORRY -- SPACE X'S

7     ARGUMENTS ABOUT WHETHER SOME OTHER LAW JUSTIFIED ITS -- ITS JOB

8     POSTINGS AND ITS INQUIRIES IS GETTING TO THE MERITS OF THE

9     UNDERLYING ALLEGATIONS AND ARE UNRELATED HERE.

10          AND AS YOU NOTED IN JANITORIAL SERVICES, THE SUBPOENA

11     ENFORCEMENT PROCEEDING SHOULD NOT BE USED TO CHALLENGE THOSE

12     OBLIGATIONS -- THOSE ALLEGATIONS.

13          AND MOREOVER, AS YOU ALSO NOTED, WE DON'T HAVE TO

14     TAKE SPACE X AT ITS WORD THAT THERE IS NO DISCRIMINATION.

15          THE COURT:  WELL, I'LL JUST NOTE THAT --

16          MS. SANDOVAL:  AND IF WE COULD HAVE --

17          THE COURT:  I'LL -- I'LL -- I'LL JUST NOTE THAT --

18     I'LL JUST NOTE THAT FOR MOST POSITIONS IN THE UNITED STATES

19     GOVERNMENT THE GOVERNMENT DISCLOSES YOU HAVE TO BE A U.S.

20     CITIZEN TO APPLY.  AND WE'LL JUST LEAVE IT THERE.

21          MS. SANDOVAL:  YOUR HONOR, I WOULD JUST NOTE -- OKAY

22     -- THAT --

23          THE COURT:  GO AHEAD.

24          MS. SANDOVAL:  AGAIN, THAT GETS INTO THE MERITS.

25          I WOULD JUST NOTE THAT --

1           THE COURT:  YEAH.  I MEAN, I DON'T -- I DON'T -- I

2    DON'T THINK THIS INVESTIGATION HAS TO DO WITH THE ADVERTISING

3    PRACTICES AND THE POSTING PRACTICES OF THESE POSITIONS RIGHT

4    NOW OR AT LEAST THAT'S NOT THE ISSUE THAT'S BEING INVESTIGATED

5    FOR WHICH THE SUBPOENAS AND REQUESTED INFORMATION IT'S A

6    DIFFERENT PART OF THE PROCESS.

7           AND I AGREE WE SHOULD PUT THAT TO THE SIDE.

8           WELL, I MEAN, THIS HAS BEEN INTERESTING.  AND THIS

9    HAS BEEN HELPFUL IN THAT I NOW HAVE AFFIRMATIVE STATEMENTS FROM

10   BOTH SIDES THAT IF THE GOVERNMENT --

11          AND I THINK YOU'RE RIGHT, MS. SANDOVAL, TO WANT TO,

12   YOU KNOW, TALK TO A SUPERVISOR, TALK TO A COLLEAGUE AND GET

13   APPROVAL.

14          AND I'M HAPPY TO GIVE YOU A SHORT AMOUNT OF TIME TO

15   DO THAT.

16          BUT, YOU KNOW, IF A BRIEF CANDID CONVERSATION WITH ME

17   AKIN TO WHAT I DO IN OTHER CIRCUMSTANCES, BOTH CIVIL AND

18   CRIMINAL, REGARDING THE LEGITIMACY OF THE GOVERNMENT'S

19   INVESTIGATION -- WHICH IS PART -- IN THE SUBJECT OF A SWORN

20   DECLARATION FROM THE LEAD LAWYER HERE, YOU KNOW, IF THAT'S

21   SOMETHING THAT RESOLVES THESE ISSUES AND WILL ALLOW THIS MATTER

22   TO MOVE FORWARD, I'D BE HAPPY TO MAKE MYSELF AVAILABLE.

23          AND, SO, MS. SANDOVAL AND MS. JHAVERI, WE CAN TALK

24   NOW ABOUT SORT OF THE LOGISTICS.  BECAUSE I'D LIKE TO HAVE THAT

25   QUICK CHAT AND EITHER RECONVENE OR, IF RECONVENING ISN'T

1  NECESSARY, JUST ISSUE A DECISION, DEPENDING ON WHAT THE -- WHAT

2  THE DISCUSSION LEADS TO.  BECAUSE YOU'VE INDICATED YOU WANT TO

3  -- YOU WANT TO MOVE FORWARD WITH THIS.

4           WHEN DO YOU THINK YOU CAN GET BACK TO ME?

5           MS. SANDOVAL:  YOUR HONOR, CAN WE MAKE A VERY

6  IMPORTANT POINT REGARDING PRONG 1 BECAUSE THIS APPEARS TO

7  RELATE TO OUR AUTHORITY TO INVESTIGATE.

8           AND MS. JHAVERI HAS A POINT TO MAKE.

9           THE COURT:  PRONG 1.  GO AHEAD.

10          MS. JHAVERI:  YES, YOUR HONOR.

11          WE'VE BEEN DISCUSSING THE REASON TO BELIEVE -- WHICH

12  WE ACTUALLY FIND IN THE REGULATIONS THAT AUTHORIZE 1324(B).

13          BUT I WANTED TO BRING US BACK TO THE LARGER POINT OF

14  PRONG 1 OF THE SUBPOENA ENFORCEMENT TEST WHICH IS -- IT'S A

15  GENERAL INQUIRY ABOUT WHETHER THE -- WHETHER CONGRESS HAS

16  GRANTED THE AGENCY THE AUTHORITY TO INVESTIGATE.

17          AND THE NINTH CIRCUIT HAS -- HAS STATED IN THE

18  FEDERAL EXPRESS CASE THAT THIS IS A FAIRLY NEW NARROW AND

19  MINIMAL SHOWING.

20          AND A DISTRICT COURT SHOULD FIND THIS PRONG IS MET

21  UNLESS JURISDICTION IS PLAINLY LACKING.

22          SO, WE DO WANT TO MAKE THAT POINT IN THAT WE DO NOT

23  BELIEVE IT IS NECESSARY FOR US TO SHOW THE REASON TO BELIEVE IT

24  IN ORDER TO MEET PRONG 1.

25          BUT AS YOU'VE NOTED, WE WILL, OF COURSE, SPEAK WITH

31

1    OUR SUPERVISORS ABOUT YOUR -- YOU KNOW, ANYTHING THAT YOU

2    REQUIRE US TO -- TO PROVIDE AND --

3            THE COURT:  SO -- SO, HOW AM I SUPPOSED TO MAKE A

4    DETERMINATION AS TO WHETHER JURISDICTION IS PLAINLY LACKING

5    UNLESS I'M EDUCATED ON SOME BASIC FACTS?

6            MS. JHAVERI:  WELL, YOUR HONOR --

7            THE COURT:  BECAUSE -- BECAUSE YOU -- BECAUSE YOU

8    POINTED OUT THAT THERE ARE DISCRETIONARY FINDINGS THAT THIS

9    COURT HAS TO MAKE IN THIS MATTER.

10           AND I COULD POTENTIALLY EXERCISE MY DISCRETION AND

11   JUST SAY THAT MS. SANDOVAL'S PRESENT DECLARATION IS SUFFICIENT.

12   BUT I MIGHT NOT.

13           MS. JHAVERI:  YOUR HONOR, WE -- THE UNITED STATES

14   WOULD ARGUE THAT THIS -- THE ANALYSIS UNDER PRONG 1 IS AN

15   ANALYSIS OF WHETHER THE STATUTE AUTHORIZES THIS TYPE OF

16   INVESTIGATION.

17           AND, SO, WE LOOK TO THE ACTUAL STATUTE --

18           THE COURT:  THIS TYPE OF INVESTIGATION.  SO, CAN IER

19   INVESTIGATE IMMIGRATION-RELATED HIRING PRACTICES IN GENERAL?

20           MS. JHAVERI:  WELL -- AND SPECIFICALLY THE PROVISIONS

21   UNDER OUR STATUTE SINCE WE DON'T HAVE AUTHORITY OVER ALL SORT

22   OF THE HIRING PRACTICES.

23           THE COURT:  OKAY.  BUT YOU HAVE -- YOU HAVE --

24           WHAT IF I MAKE A FINDING TODAY THAT YOU HAVE THE

25   AUTHORITY TO ENGAGE IN EEV INVESTIGATIONS GENERALLY.

```
1            IS THAT IT?

2            MS. JHAVERI:  SO, WE WOULD ARGUE FOR PRONG 1.  AND

3    I'M -- AND I WANT TO BE CLEAR.  AND I'M SOLELY TALKING ABOUT

4    PRONG 1 OF THE SUBPOENA ENFORCEMENT TEST.  WE OBVIOUSLY ALSO

5    NEED TO MEET RELEVANCE AND -- AND THE OTHER PRONG.  BUT THAT --

6    THAT -- YES, THAT IS SUFFICIENT TO MEET PRONG 1 OF THE SUBPOENA

7    ENFORCEMENT TEST.

8            AND I BELIEVE THE FEDERAL EXPRESS CASE IS PRETTY

9    CLEAR ABOUT THAT.

10           THE COURT:  OKAY.

11           SO, YOU HAVE THE BROAD AUTHORITY TO INVESTIGATE ANY

12   EEV MATTER AS LONG AS -- I MEAN, THAT'S YOUR TAKE.

13           MS. JHAVERI:  WHAT --

14           THE COURT:  SO, WHERE DOES -- WHERE DOES REASON TO

15   BELIEVE COME INTO PLAY?

16           MS. JHAVERI:  SO, THE REASON TO BELIEVE IS A

17   PROVISION THAT COMES OUT OF 28 CFR -- I BELIEVE IT'S 44304

18   WHICH --

19           THE COURT:  RIGHT.  THAT'S WHERE IT'S CODIFIED.

20           MS. JHAVERI:  YES --

21           THE COURT:  BUT HOW DOES IT PLAY INTO THE THREE-STEP

22   ANALYSIS?

23           MS. JHAVERI:  SO, THAT  -- THAT GOES TO OUR AUTHORITY

24   UNDER -- SO, UNDER THE STATUTE WE HAVE THE AUTHORITY TO

25   INVESTIGATE CHARGES -- WHICH I DON'T THINK ANYONE IS -- IS
```

1    CHALLENGING HERE TODAY -- AND THE AUTHORITY TO INVESTIGATE ON

2    OUR OWN INITIATIVE.

3          THE COURT:  IF YOU HAVE -- IF YOU HAVE REASON TO

4    BELIEVE.

5          MS. JHAVERI:  THAT'S CORRECT.  BUT I -- I WANT TO BE

6    CLEAR.

7          WHAT I'M SAYING THAT THE FIRST PRONG OF THE SUBPOENA

8    ENFORCEMENT TEST IS LOOKING AT DOES THIS AGENCY -- CAN IT

9    INVESTIGATE THIS TYPE OF MATTER.

10         AND REASON TO BELIEVE -- IT'S NOT NECESSARY FOR US TO

11    SHOW THE REASON TO BELIEVE IN ORDER TO MEET PRONG 1 OF THE

12    SUBPOENA ENFORCEMENT TEST.

13         THE COURT:  RIGHT.

14         AND MY QUESTION THIRD TIME IS WHAT PRONG IS IT

15    RELEVANT TO?

16         MS. JHAVERI:  WE DON'T -- WE DON'T BELIEVE IT'S

17    RELEVANT TO ANY OF THE PRONGS BECAUSE WE'VE COMPLIED WITH THE

18    NOTICE REQUIREMENT AS MS. SANDOVAL DESCRIBED.

19         WE'VE EXPLAINED WHY THIS IS RELEVANT.

20         AND WE MEET PRONG 1, WHICH, AGAIN, IS DID CONGRESS

21    AUTHORIZE IER TO INVESTIGATE THIS TYPE -- OR CONDUCT THIS TYPE

22    OF INVESTIGATION.

23         THE COURT:  AND, SO, THE PROCEDURAL REQUIREMENTS

24    PROVISION DOESN'T REQUIRE FOLLOWING THIS PROCEDURE OF HAVING A

25    REASON TO BELIEVE?

1              MS. JHAVERI:  YOUR HONOR --

2              MS. SANDOVAL:  NO, YOUR HONOR.

3         OH.

4              MS. JHAVERI:  I APOLOGIZE.

5              MS. SANDOVAL:  YOUR HONOR, THE PROCEDURAL REQUIREMENT

6    THAT IS WHAT WE WOULD CALL PRONG 2 RELATES TO WHETHER WE

7    PROPERLY OBTAINED THE SUBPOENA WHICH WE DID PROPERLY OBTAIN

8    FROM OCAHO AND WHETHER WE ALSO FOLLOWED THE OTHER PROPER STEPS

9    IN SERVING IT UPON SPACE X -- WHICH OUR APPLICATION --

10             THE COURT:  SO, IT'S MINI- -- SO, IT'S MINISTERIAL

11   ASPECTS WITH RESPECT TO THE SUBPOENA ITSELF.

12             MS. SANDOVAL:  YES, YOUR HONOR.

13             THE COURT:  SO WHY BOTHER TELLING ME YOU HAVE REASON

14   TO BELIEVE THAT THIS IS A LEGITIMATE INVESTIGATION?

15             MS. SANDOVAL:  WE BELIEVE -- WE ACKNOWLEDGE THAT THAT

16   IS IN OUR REGULATIONS.  AND WE ARE ASSURING THE COURT THAT WE

17   HAVE A REASON TO BELIEVE.

18             THE COURT:  WHY -- WHY --

19             MS. SANDOVAL:  AND WE DO WANT TO MAKE CLEAR, YOUR

20   HONOR --

21             THE COURT:  WHY?  HOW IS IT -- IF IT'S NOT RELEVANT

22   TO THIS INVESTIGATION, WHY AM I TAKING THIS UP AT ALL?

23             MS. SANDOVAL:  WE -- AGAIN, OUR STANCE IS THAT THE

24   RELEVANT TEST IS OUR AUTHORITY TO INVESTIGATE -- WHICH AS MS.

25   JHAVERI SAID THAT THAT'S A BROAD INQUIRY INTO WHETHER CONGRESS

1    HAS PRESCRIBED US AUTHORITY TO INVESTIGATE THE TYPE OF

2    VIOLATION OF THE LAW.

3              AND HERE THAT IS THE ANTI-DISCRIMINATION PROVISION OF

4    THE IMMIGRATION --

5              THE COURT:  SO, THE NINTH CIRCUIT'S FISHING

6    EXPEDITION CASES -- AND THEY'RE OUT THERE, RIGHT?

7              YOU AGREE, MS. SANDOVAL, YOU CAN'T GO ON A FISHING

8    EXPEDITION? -- PLANKTON, KRILL, WHATEVER --

9              MS. SANDOVAL:  ABSOLUTELY.  AND THAT -- THAT'S NOT

10   WHAT WE'RE DOING.

11             THE COURT:  WELL -- WELL, WHERE DOES -- WHAT IS THE

12   BASIS FOR THE NINTH CIRCUIT TELLING DISTRICT JUDGES TO MAKE

13   SURE -- AND MAGISTRATE JUDGES HERE -- TO MAKE SURE THAT THE

14   GOVERNMENT IS NOT ENGAGING IN A FISHING EXPEDITION?  WHERE DOES

15   THAT COME FROM?

16             MS. SANDOVAL:  YOUR HONOR, WE BELIEVE THAT THAT

17   RELATES TO PRONG 3, THE RELEVANCE PRONG.  AND THAT IF YOU CAN

18   SHOW THAT THE INFORMATION SOUGHT IS RELEVANT TO THE GENERAL

19   PURPOSE OF THE INVESTIGATION THEN --

20             THE COURT:  WHICH PRESUPPOSES --

21             MS. SANDOVAL:  -- YOU HAVE SATISFIED --

22             THE COURT:  -- WHICH PRESUPPOSES LEGITIMACY OF THE

23   INVESTIGATION.

24             RIGHT?

25             MS. SANDOVAL:  YEAH.  I MEAN, THAT'S A SEPARATE

36

1    ELEMENT OF THE LEGAL TEST.

2              THE COURT:  OKAY.

3              SO -- SO, YOU AND I WOULD BE TALKING IN CHAMBERS FOR

4    PURPOSES OF SATISFYING PRONG 3 PERHAPS RATHER THAN PRONG 1 OR

5    2?  IS THAT WHERE YOU'RE GOING?

6              IS THAT WHY YOU WANTED MS. JHAVERI TO CLARIFY THAT?

7              MS. SANDOVAL:  WELL, YOUR HONOR, WE BELIEVE THERE'S

8    ENOUGH INFORMATION BEFORE YOU RIGHT NOW TO DETERMINE RELEVANCE.

9              WE EMPHASIZE THAT WE -- WE WILL CONFER WITH OUR

10   SUPERVISORS AND GET BACK TO YOU AND -- ON THE IN CAMERA REVIEW.

11   WE JUST WANTED TO CLARIFY THAT WE -- WE DON'T BELIEVE THAT

12   THAT'S NECESSARY TO RESOLVE THIS DISPUTE.

13             THE COURT:  OKAY.

14             MS. SANDOVAL:  BUT AS I SAID, WE'RE -- WE'RE WILLING

15   TO COMPLY WITH WHATEVER --

16             THE COURT:  IF YOU -- IF YOU -- IF YOU WANT ME TO --

17   IF YOU WANT ME -- NO.  JUST SO IT'S CLEAR.

18             IF YOU WANT ME TO EXERCISE MY DISCRETION AND MAKE

19   FINDINGS HERE BASED ON THE RECORD AS IT IS, I CAN.  I'M

20   OFFERING YOU AN OPPORTUNITY TO AUGMENT THAT RECORD IN A WAY

21   THAT RECOGNIZES THE LEGITIMACY OF THE LAW ENFORCEMENT

22   PRIVILEGES THAT YOU'VE RAISED.

23             MS. SANDOVAL:  YES.

24             THE COURT:  AND IT MAY -- AND MAY EFFECTIVELY KNOCK

25   DOWN SOME, YOU KNOW, VOCAL ARGUMENTS FROM MR. CONNOLLY THAT

1    YOU'VE RAISED HERE AND MAY GO A LONG -- MAY GO A LONG WAY.

2           SO, I'D -- I'D ENCOURAGE YOU TO GIVE -- GIVE THAT

3    SOME SERIOUS THOUGHT AND DISCUSSION.  BECAUSE IT'S NOT EVERY

4    DAY YOU GET A FEDERAL JUDGE SAYING LET'S TALK ABOUT THIS IN A

5    CONFIDENTIAL WAY.

6           MS. SANDOVAL:  ABSOLUTELY, YOUR HONOR.

7           THE COURT:  AND I --

8           MS. SANDOVAL:   AND WE --

9           THE COURT:  AND WHEN CAN YOU -- AND WHEN CAN YOU GET

10   BACK TO ME ON THAT DO YOU THINK?

11          MS. SANDOVAL:  WELL, AS SOON AS WE'RE OFF THIS

12   HEARING CALL WE WILL JUMP ON THE LINE WITH OUR SUPERVISORS AND

13   TRY TO GET BACK TO YOU AS SOON AS POSSIBLE.

14          THE COURT:  OKAY.  WELL, THAT'S UNDERSTANDABLE.

15          LET ME GIVE YOU  -- LET ME GIVE YOU A HAND.

16          I HAVE AVAILABILITY LATER TODAY THROUGH THE

17   CALIFORNIA AFTERNOON.  AND I WILL MAKE MYSELF AVAILABLE.

18          AND JUST SO IT'S CLEAR IT WOULD BE IN A WAY THAT

19   WOULD NOT BE PUBLICLY ACCESSIBLE BECAUSE IN CAMERA REVIEW OF A

20   CONFIDENTIAL MATTER LIKE THIS IS APPROPRIATE AND AUTHORIZED.

21          I COULD ALSO MAKE TIME FOR YOU TOMORROW.  I HAVE A

22   COUPLE OF HEARINGS IN THE MORNING, BUT I'M REASONABLY AVAILABLE

23   PROBABLY AFTER TEN O'CLOCK ON THE CALIFORNIA DAY.

24          MS. SANDOVAL:  OKAY, YOUR HONOR.  I'M JUST

25   CONFERRING.

1          THE COURT:  OKAY.  YOU DON'T -- YOU DON'T HAVE TO

2    COMMIT RIGHT NOW.  AND IF YOU WANT TO GET BACK TO MY CHAMBERS

3    LATER TODAY --

4          MS. SANDOVAL:  YES, YOUR HONOR.

5          THE COURT: -- WITH WHAT YOU'D LIKE.

6          UNFORTUNATELY, I'M NOT AVAILABLE MONDAY OR TUESDAY,

7    BUT WE COULD DO SOMETHING AFTER THAT IF NEED BE.

8          BUT MY -- MY THOUGHT IS THIS IS AN EASY ONE.  AND IF

9     -- IF YOU FOLKS WANTED TO HAVE A CONFIDENTIAL DISCUSSION, AND

10   IF YOU FOLKS AGREE -- AND I'LL JUST  -- LAST TIME.

11         AS I DO WITH MEMBERS OF THE JUSTICE DEPARTMENT AND

12   THE U.S. ATTORNEY'S OFFICE ALL THE TIME -- IT'S INTERESTING

13   THAT MR. CONNOLLY RAISES ISSUES OF FOURTH AMENDMENT AND, YOU

14   KNOW, REASONABLE BASIS FOR MOVING FORWARD.  THAT'S THE PURPOSE

15   OF ALMOST ALL PROCESS THAT I SEE IN CRIMINAL INVESTIGATIONS TO

16   GET WARRANTS, CRIMINAL COMPLAINTS, APPLICATIONS FOR PEN

17   REGISTERS AND THINGS LIKE THAT.  IT'S THE GOVERNMENT COMING IN

18   CONFIDENTIALLY AND LAYING OUT IN WHATEVER DETAIL IS NECESSARY,

19   THE BASIS FOR THE INVESTIGATION AND THE REQUEST.  IT HAPPENS

20   ALL THE TIME AND IS ENTIRELY APPROPRIATE.

21         MR. CONNOLLY, ARE YOU COMFORTABLE WITH WHERE WE ARE

22   RIGHT NOW?

23         MR. CONNOLLY:  YES, YOUR HONOR.

24         THE COURT:  AND YOU CAN BE ASSURED THAT IF I HAVE A

25   CONVERSATION WITH THE GOVERNMENT, I'M GOING TO RESPECT THAT

39

1  CONFIDENCE OBVIOUSLY.  BUT I WILL KEEP YOU APPRISED OF THE FACT

2  OF THAT DISCUSSION.  AND IF IT'S APPROPRIATE TO RECONVENE AND

3  TALK FURTHER OR, YOU KNOW, WHATEVER OTHER DIRECTION, I WILL

4  KEEP YOU INFORMED ABOUT THAT.

5          MR. CONNOLLY:  THANK YOU, YOUR HONOR.  WE'RE READY TO

6  ADDRESS ANY QUESTIONS THE COURT HAS.

7          THE COURT:  OH, I THINK -- I THINK YOU ALREADY HAVE.

8          MR. CONNOLLY:  (LAUGHING.)

9          THE COURT:  I'M HAPPY TO -- IF THERE'S ANYTHING ELSE

10  THAT WE -- AND LIKE I SAID, I MEAN, I HOPE YOU CAN TELL THAT

11  NOTWITHSTANDING MY PARTIAL IGNORANCE OF SOME OF THE PROCEDURES

12  HERE, I HAVE GONE OVER YOUR PAPERS QUITE -- QUITE CLOSELY.

13  AND, SO, I DON'T HAVE QUESTIONS BEYOND THAT.

14          BUT, MR. CONNOLLY, IF THERE IS ANYTHING ELSE TO

15  ACCOMPANY IT, I'D BE HAPPY TO HEAR YOU.

16          MR. CONNOLLY:  WE'RE ALL SET, YOUR HONOR.

17          THANK YOU.

18          THE COURT:  OKAY.

19          MS. JHAVERI AND MS. SANDOVAL, ANYTHING ELSE FOR THE

20  GOVERNMENT?

21          MS. SANDOVAL:  NOT AT THIS TIME, YOUR HONOR.

22          THE COURT:  OKAY.

23          THEN I'LL LOOK FORWARD TO HEARING FROM YOU HOPEFULLY

24  LATER TODAY.

25          AND LIKE I SAID, WE CAN SET THIS UP ON 10 MINUTES'

40

1    NOTICE AS LONG AS WE'RE ALL AVAILABLE AND HAVE THAT DISCUSSION.

2    AND WE CAN MOVE FORWARD FROM THERE.

3            SO, I HOPE WE CAN GET SOME -- WE CAN GET SOME

4    TRACTION ON THAT.

5            OKAY.  THANK YOU ALL VERY MUCH.

6            AND WE'RE ADJOURNED.

7            MS. SANDOVAL:  THANK YOU VERY MUCH, YOUR HONOR.

8            MR. CONNOLLY:  THANK YOU, YOUR HONOR.

9            MS. JHAVERI:  THANK YOU, YOUR HONOR.

10           (PROCEEDINGS ADJOURNED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

41

C E R T I F I C A T E

        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.


/S/ DOROTHY BABYKIN                     3/29/21
_____        _____
FEDERALLY CERTIFIED TRANSCRIBER         DATED
DOROTHY BABYKIN