1

2

3

4

**AKIN GUMP STRAUSS HAUER & FELD LLP**
JESSICA H. RO (SBN 329737)
jro@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone:   310.229.1000
Facsimile:   310.229.1001

5

6

7

8

9

10

**AKIN GUMP STRAUSS HAUER & FELD LLP**
CHARLES F. CONNOLLY *(Pro Hac Vice)*
JAMES E. TYSSE *(Pro Hac Vice)*
JOSEPH DIPIERO *(Pro Hac Vice)*
cconnolly@akingump.com
jtysse@akingump.com
jdipiero@akingump.com
2001 K Street, NW
Washington, DC 20006
Telephone:   202.887.4000
Facsimile:   202.887.4288

11

Attorneys for Respondent

12

13

SPACE EXPLORATION TECHNOLOGIES, d/b/a
SPACEX

14

UNITED STATES DISTRICT COURT

15

CENTRAL DISTRICT OF CALIFORNIA

16

WESTERN DIVISION

17

18

19

20

21

22

23

24

UNITED STATES OF AMERICA,

Petitioner,

vs.

SPACE EXPLORATION
TECHNOLOGIES CORP., d/b/a
SPACEX,

Respondent.

Case No. 2:21-mc-00043-DMG-MRW

**RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Date Action Filed: January 28, 2021
Judge: Hon. Dolly M. Gee

25

26

27

28

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ..................................................................................3

III.  LEGAL STANDARD............................................................................7

IV.   ARGUMENT ........................................................................................8

    A.   This Court May Enforce An IER Subpoena Only If IER Has The
        Authority To Investigate The Matter In Question.............................8

    B.   The Magistrate Judge Erred In Granting IER's Application To
        Enforce The Subpoena...................................................................10

        1.   IER Failed To Meet Its Prima Facie Burden of Showing That
               Its Documentary Practices Investigation Was Authorized. ...... 10

        2.   IER's Skeletal Statement Should Not Have Been Accepted
               Without Further Inquiry. ..................................................... 11

        3.   Ruling in SpaceX's Favor Will Not Open Up Agencies To
               Searching Review ............................................................... 14

V.    CONCLUSION ..................................................................................16

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abram v. City and Cnty. of San Francisco*,
    2008 WL 4462104 (N.D. Cal. Oct. 3, 2008)...............................................11

*Brown v. Roe*,
    279 F.3d 742 (9th Cir. 2002)...................................................................8

*EEOC v. Aaron Bros. Inc.*,
    620 F. Supp. 2d 1102 (C.D. Cal. 2009).....................................................14

*EEOC v. Fed. Express Corp.*,
    558 F.3d 842 (9th Cir. 2009)..................................................................14

*EEOC v. Karuk Tribe Hous. Auth.*,
    260 F.3d 1071 (9th Cir. 2001) ..................................................................8

*FDIC v. Garner*,
    126 F.3d 1138 (9th Cir. 1997)............................................................ 9, 11

*Humphrey v. Dep't of Def.*,
    No. MC 18-00369 DKW-KJM, 2018 WL 5020209 (D. Haw. Oct. 16,
    2018).............................................................................................11

*Larimi v. INS*,
    782 F.2d 1494 (9th Cir. 1986)................................................................11

*Mathews v. Weber*,
    423 U.S. 261 (1976) ...............................................................................8

*McLane Co., Inc. v. EEOC*,
    137 S. Ct. 1159 (2017)......................................................................11, 16

*In re Investigation of NHS Human Servs.*,
    10 OCAHO no. 1198 (2013), 2013 WL 4502693........................................15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..................................................................11

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

*U.S. v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ............................................................... 10

*U.S. v. Rivera-Guerrero*,
    377 F.3d 1064 (9th Cir. 2004) ............................................................ 8

*U.S. v. Song Ja Cha*,
    597 F.3d 995 (9th Cir. 2010) .............................................................. 8

*Virginia v. Black*,
    538 U.S. 343 (2003) ......................................................................... 12

**Statutes**

8 U.S.C. § 1324b ................................................................................ 5, 6

28 U.S.C. § 636(b)(1) ............................................................................. 7

**Other Authorities**

28 C.F.R. § 44.304(a) ...................................................................... 8, 9, 15

28 C.F.R. § 65.25(e) ............................................................................... 6

Fed. R. Civ. P. 72(b)(3) ...................................................................... 7, 13

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

This case is about whether the Immigration and Employee Rights Section ("IER") of the Department of Justice has even a minimal duty to demonstrate its authority to open far-reaching investigations into a private company—and whether the Magistrate Judge erred in simply taking the government's word for it.

# I.   **INTRODUCTION**

Last year, a disgruntled job applicant ("Charging Party") filed a charge of citizenship discrimination against SpaceX with IER.   Although the charge was nonsensical on its face—among other reasons, the applicant voluntarily disclosed that he was not a U.S. citizen on his résumé, yet was subsequently selected from a pool of hundreds for two rounds of interviews—IER officially accepted the charge on May 29, 2020, and opened an investigation into his citizenship-discrimination allegation.   On the very same day, IER opened up two additional investigations into SpaceX:   (i) an investigation into whether SpaceX engaged in a "pattern or practice" of such citizenship discrimination; and (ii) an unrelated investigation into whether SpaceX engaged in a pattern or practice of "unfair documentary practices," *i.e.*, discriminating against employees when verifying their identity during the Form I-9 "onboarding" process upon hiring.

As an initial matter, SpaceX does not unlawfully discriminate against job applicants based on their citizenship, or any other criteria not related to an applicant's ability to help the company meet its lofty objectives, including enabling human life on Mars and making humans a multi-planetary species.   To the contrary, given its ambitious goals, SpaceX seeks to hire the most talented people on Earth regardless of citizenship status, and in fact has hundreds of non-U.S. citizens on its payroll.   Due to the nature of its business— designing, manufacturing, and launching advanced rockets and spacecraft, including for U.S. government customers—SpaceX's hiring discretion is sometimes constrained by federal laws like the International Traffic in Arms Regulations, but SpaceX cannot afford

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

to allow citizenship discrimination to play a role in its hiring process. That was true for the Charging Party.

With respect to the subpoena at issue here, SpaceX spent over 100 hours and produced over 1,000 pages in responding to IER's investigation, but IER nonetheless deemed those efforts deficient and brought this suit to enforce an administrative subpoena. That subpoena, however, demands many thousands of documents that are all explicitly related to Forms I-9 (including all attachments to Forms I-9, any E-Verify documents related to Forms I-9, and any employment eligibility documents related to Forms I-9). As the Magistrate Judge correctly found, because individuals who are not hired (like the Charging Party) never submit a Form I-9, the subpoenaed documents "logical[ly]" relate only to the documentary-practices investigation—not to either of the citizenship-discrimination investigations. And as IER conceded, before it could open its documentary-practices investigation, it was required by its own regulations "to have a reason to believe" that SpaceX was committing, or had committed, unfair documentary practices. Tr. 10. Otherwise, it lacked authority to open that investigation in the first place.

Where the Magistrate Judge erred was in concluding that IER adequately substantiated its claimed "reason to believe" based entirely on a single "terse[]," "skeletal" sentence in a reply declaration essentially parroting the statutory language. R. & R. at 6. In its entirety, the relevant sentence reads: "At the time it opened its investigation, IER had information supporting a reason to believe that [SpaceX] may be engaging in a pattern or practice of discrimination in violation of § 1324(b)(a)(1) and (6)." Sandoval Decl. in Supp. of Applicant's Reply to Resp't's Opp'n to United States' Appl. for Order to Comply with Admin. Subpoena ¶ 2, ECF No. 20-1. Yet the Magistrate Judge found that that unadorned, self-serving statement, without more, satisfied IER's "prima facie" showing to enforce the subpoena. The Magistrate Judge further erred in deeming that statement *conclusive*, in both declining to consider contradictory evidence proffered

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

by SpaceX and in excusing IER's inexplicable refusal to disclose the basis of its investigation to the Magistrate Judge *ex parte* and *in camera*.

IER should not be permitted to tell a coequal branch of government to simply take its word for it, particularly when both logic and contradictory evidence in the record should at least have prompted further inquiry. Allowing IER to conclusively proclaim its own authority to investigate undermines the judiciary's role as a check on executive branch overreach and would render pointless the requirement that IER seek enforcement of its subpoenas through the courts. Although the Magistrate Judge aptly criticized the DOJ for "hamper[ing]" its inquiry by declining a "quick in camera discussion" that could have "obviated the need to expend judicial resources in this busy federal court," R. & R. at 6 & 9 n.6, he should have gone further and actually recommended denial of the government's application.

Because IER owed the Court more than a single conclusory sentence to justify its expansive and unfounded documentary-practices investigation, this Court should reject the Magistrate Judge's recommendation and deny the government's application for an order requiring SpaceX to comply with its subpoena.

## II.   <u>BACKGROUND</u>

On May 29, 2020, IER accepted a charge from an individual Charging Party who alleged SpaceX committed citizenship status discrimination. *See* Sandoval Decl. in Supp. of Appl. for Order to Comply with Admin. Subpoena ("Jan. 27, 2021 Sandoval Decl.") Ex. 1 at 1, ECF No. 1-3. On the same day, IER opened two additional "pattern or practice" investigations: an investigation into whether SpaceX committed citizenship status discrimination, and an apparently unrelated investigation concerning "unfair documentary practices" in SpaceX's onboarding process for hired employees. *See* Appl. for Order to Comply with Admin. Subpoena ¶ 6, ECF No. 1 ("On May 29, 2020, IER opened an investigation of SpaceX to determine whether it had engaged in an individual violation or pattern or practice of (1) citizenship status discrimination . . . and/or (2)

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

requesting more or different documents than are required to establish employment eligibility, or rejecting documents that reasonably appear genuine (commonly called 'unfair documentary practices') . . . ."); *see also* Tr. 13 (IER acknowledging that "on-boarding . . . is when the Form I-9 process occurs.").

In a letter sent ten days later, IER demanded voluminous information and records from SpaceX across thirteen categories (and nearly forty separate subcategories), many of which bore no relation to the Charging Party's discrimination claim. *See* Jan. 27, 2021 Sandoval Decl. Ex. 1, ECF No. 1-3. For example, IER demanded, for all 1,700+ job vacancies SpaceX had posted from June 1, 2019 to the present, (1) a copy of the vacancy announcement; (2) the name, job title, start date, hiring date, wage or salary for each individual hired; (3) all documents relating to the hired individuals, including, but not limited to, Forms I-9, interview notes, personnel files, etc.; and (4) the name, job title, start date, phone number, and email address for each individual who made the hiring decision, among other information.

Despite the burdensome nature of the requests, SpaceX endeavored to cooperate, submitting initial responses to IER's request for information on July 8. *See* Cardaci Decl. in Supp. of Resp't's Opp'n to Pet'r's Appl. for Order to Comply with Admin. Subpoena ("Cardaci Decl.") Ex. 3, ECF No. 19-4. SpaceX's submission included detailed, narrative responses to the questions posed by IER. SpaceX also voluntarily provided evidence and a detailed explanation showing why the Charging Party's claims were meritless, including the job listing for the Technical Strategy Associate, the Charging Party's application and résumé, correspondence between the SpaceX recruiter and the Charging Party, and a copy of the feedback memo prepared by the SpaceX employee who interviewed him. SpaceX additionally provided IER with voluminous personnel records, including Excel spreadsheets, that disclosed: (1) over 1,700 job openings posted by SpaceX between June 1, 2019 and June 12, 2020; (2) over 2,500 job openings filled since June 1, 2019; and (3) over 2,700 employees who were hired between June 1, 2019 and June 12, 2020. This data

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

covered job openings in five states across nine different SpaceX facilities, and related to a wide range of jobs, including temporary and part-time positions such as line cooks and custodians. In total, SpaceX employees spent over 100 hours, and provided over 1,000 pages of documents, addressing IER's information requests.

IER responded a month later by notifying SpaceX that its production was "deficient in several regards." *See* Cardaci Decl. Ex. 4 at 25, ECF No. 19-5 (hereinafter the "August 13 Letter"). IER requested that SpaceX supplement its responses, including by providing Forms I-9 for each individual employee hired or re-verified since June 1, 2019, as well as additional categories of documents (including sample offer letters, training materials, and scripts used by recruiters during the initial screening process of job candidates). IER also revealed that it was investigating what it called "*possible* use of unfair documentary practices based on citizenship status or national origin in the employment eligibility verification process in violation of 8 U.S.C. § 1324b(a)(6)." *Id.* (emphasis added). That was true even though it is undisputed that SpaceX never asked the Charging Party to provide such Form I-9 documents, and the Charging Party did not allege "unfair documentary practices" in his charge.

Over the ensuing months, SpaceX continued to produce voluminous additional records in response to IER's requests, including the sample offer letter, interview questions, and training materials. Despite its lack of relevance to the Charging Party's allegations, SpaceX also produced an Excel chart containing Form I-9 and E-Verify data for the over 3,500 employees hired or re-verified between June 4, 2019 and August 17, 2020. The Excel chart identifies the employees' first and last name, hire date, the documents used to verify the employees' I-9 status, and the last four digits of the employees' social security number. An index of the materials that SpaceX has produced to date was attached as Ex. 5 to the Cardaci Decl. (ECF No. 19-6). SpaceX also attempted to reach a reasonable agreement with IER with respect to the remaining burdensome requests in the August 13 Letter. In particular, SpaceX sought to avoid the burden and

expense of producing supporting I-9 documentation (such as passports, driver's licenses, social security cards, permanent resident cards, alien registration receipt cards, and birth certificates) for over 3,500 SpaceX employees.

Rather than compromise, on October 5, 2020, IER secured an administrative subpoena from OCAHO pursuant to 8 U.S.C. § 1324b(f)(2), requesting the following with respect to each Form I-9 listed in the Excel chart SpaceX had produced: (1) any and all attachments to the Form I-9; (2) any E-verify related printouts or other E-Verify document related to the Form I-9; and (3) any employment eligibility document related to the Form I-9. SpaceX again asked IER to tailor the subpoena to address matters that were properly under investigation. On October 20, 2020, IER informed SpaceX that it was not interested in any accommodation regarding the scope of its subpoena short of full compliance. After OCAHO denied SpaceX's Petition to Modify or Revoke the Subpoena pursuant to 28 C.F.R. § 65.25(e), SpaceX informed IER that it would not produce additional documents absent a court order. IER then filed an application for an order to comply with the administrative subpoena in this Court.

Following briefing, Magistrate Judge Wilner held a hearing on the application on March 18, 2021. Although IER initially accused SpaceX of "fabricating" the requirement that IER must demonstrate a "reasonable belief" to justify an investigation that is "not charge based," Applicant's Reply to Resp't's Opp'n to United States' Appl. for Order to Comply with Admin. Subpoena ("IER Reply") at 12, ECF No. 20, the agency backtracked at the hearing, conceding that, "for our pattern or practice investigation, we do have to have a reason to believe" that SpaceX had committed or was committing a violation. Tr. 10. After IER declined to elaborate on the basis for that "reason to believe," *id.*, the Court offered IER the opportunity to make an *in camera* presentation, outside the presence of SpaceX's lawyers, "to explain to the Court anything about the nature of its investigations into SpaceX," R. & R. at 6. SpaceX did not object. *See* Tr. 23 ("[Court:] Are you interest[ed] in having that review, Mr. Connolly? Mr. Connolly: Yes, your

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

honor."). Yet in a letter sent later that same day, "the government declined – even in a non-public context, and with the consent of the company – to explain to the Court anything about the nature of its investigations into SpaceX." R. & R. at 6; *see* Ex. 1 to R. & R. (IER's March 18, 2021 Letter).

On March 29, the Magistrate Judge recommended that IER's application be granted. R. & R. at 2. The Magistrate Judge noted that IER's subpoena—which sought solely Form I-9-related documents—"does not appear to have any logical relationship to the investigation initiated regarding the company's decision not to hire the Charging Party," as SpaceX never hired him and thus "necessarily never received I-9 materials from him." *Id.* at 6–7. The Magistrate Judge further found that "IER hasn't remotely explained how I-9 records obtained during the 'onboarding' process for hired employees could be probative of alleged misconduct of SpaceX either for refusing to hire the Charging Party or for engaging in a pattern of discriminating against non-U.S. citizens." *Id.* at 7. The Magistrate Judge nevertheless held that the subpoenaed documents were relevant to IER's investigation into SpaceX's supposed "unfair documentary practices." *Id.* at 7–8. And he found that an IER lawyer's reply declaration, which "tersely attest[ed] that the agency 'had information supporting a reason to believe' that such violations occurred," sufficed to demonstrate IER's authority. *Id.* at 6 ("Although there's no meat on the bone, Ms. Sandoval's skeletal declaration is sufficient to establish that IER commenced a legitimate investigation on its own initiative . . . regarding I-9 over documentation claims.").

## III.   **LEGAL STANDARD**

When a party timely objects to a magistrate judge's proposed findings and recommendations regarding a dispositive matter, the district court must rule on those objections de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* In "exercising its independent judgment, '[t]he district judge is free to follow [the magistrate judge's]

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

recommendation] or wholly to ignore it, or, if [s]he is not satisfied, [s]he may conduct the review in whole or in part anew.'" *U.S. v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir. 2004) (quoting *Mathews v. Weber*, 423 U.S. 261, 271 (1976)). But either way, "the district court must actually exercise its discretion, rather than summarily accepting or denying the motion." *U.S. v. Song Ja Cha*, 597 F.3d 995, 1003 n.7 (9th Cir. 2010) (quoting *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002)).

## IV.   **ARGUMENT**

The area of dispute is narrow. Both parties agree that IER's subpoena may be enforced only if IER had authority to open the "unfair documentary practices" investigation into SpaceX. And both parties agree that IER possessed such authority only if it had "reason to believe" that SpaceX had engaged or was engaging in unfair documentary practices when IER opened its investigation. 28 C.F.R. § 44.304(a). Thus, the only remaining dispute is whether, on de novo review, IER adequately demonstrated that authority to investigate SpaceX's supposed pattern or practice of committing "unfair documentary practices" on the basis of a single, self-serving, conclusory statement made by one of its attorneys and for the first time in a reply affidavit. Because IER failed to support that statement, which is contradicted by record evidence, this Court should reject the Magistrate Judge's recommended disposition and deny IER's application to enforce the subpoena.

### A.   **This Court May Enforce An IER Subpoena Only If IER Has The Authority To Investigate The Matter In Question**

The parties agree on the legal standard for enforcement, which turns on "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence [sought by the subpoena] is relevant and material to the investigation." R. & R. at 3 (citing *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001)). The government bears the burden

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

of making that showing, including through affidavit or other evidence.  *See id.* (citing *FDIC v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997)).

The parties' dispute primarily implicates the first prong of that test:  whether IER had the "authority" to launch the only investigation to which the subpoenaed documents logically pertain.  As the Magistrate Judge correctly recognized—and as IER ultimately conceded—IER's regulations required it to have "reason to believe" that SpaceX had committed or was committing documentary-practices violations before it could launch such an investigation.  R. & R. at 5 (IER must "have 'reason to believe' that an employer is engaging in such misconduct to conduct" an investigation on its "own initiative," including IER's investigation "regarding I-9 overdocumentation claims") (citing 28 C.F.R. § 44.304(a)); *see* Tr. 10 (IER: "[F]or our pattern or practice investigation, we do have to have a reason to believe.").[1]  As the Magistrate Judge also correctly concluded, the subpoenaed documents are logically relevant only to the investigation IER launched on its "own initiative" into whether SpaceX engaged in a pattern or practice of committing "unfair documentary practices."  *See* R. & R. at 6 ("IER's request for I-9 documents . . . could only relate to materials submitted by people who were hired," rather than those, like the Charging Party, whom "SpaceX didn't hire").

Accordingly, if, at the time IER opened its investigation, IER lacked "reason to believe" that SpaceX had engaged or was engaging in a pattern or practice of documentary-practices violations, it necessarily lacked "authority" to open it, and the application to enforce the subpoena should have been denied.  In that respect, the

---

[1] 28 C.F.R. § 44.304(a) provides that:

The Special Counsel may, on the Special Counsel's own initiative, conduct investigations respecting unfair immigration-related employment practices when there is reason to believe that a person or other entity has engaged or is engaging in such practices, and shall notify a respondent by certified mail of the commencement of the investigation.

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Magistrate Judge erred in characterizing the parties' "real dispute" as concerning "whether the subpoenaed documents were "relevant and material to any of IER's investigations" (prong three).  R. & R. at 6; *cf.* Tr. 10 (IER:  "regarding the pattern or practice investigation and our reason to believe, we believe that goes to potentially prong 1," whereas relevance "is a separate element of the test").  Whether the documents are relevant to a pending investigation necessarily requires first answering whether that particular investigation was authorized in the first place.  Otherwise, IER could launch an investigation on a whim, then demand all documents concededly "relevant" to that (unauthorized) investigation.  But that is not the law; an administrative agency has no free-ranging authority to "conduct any investigation it may conjure up." *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (discussing subpoena issued by Nuclear Regulatory Commission).

## B.   The Magistrate Judge Erred In Granting IER's Application To Enforce The Subpoena

### 1.   IER Failed To Meet Its Prima Facie Burden of Showing That Its Documentary Practices Investigation Was Authorized.

As noted, the parties' real dispute is not over whether the documents were "relevant" to its documentary-practices investigation, but whether IER was authorized to open that investigation in the first place.  That question turns on whether IER actually had "reason to believe" that SpaceX had committed or was committing a documentary-practices violation when IER opened its investigation in May 2020.  R. & R. at 6; *see* Tr. 10.

The Magistrate Judge erroneously concluded that IER adequately demonstrated its authority based entirely on a single, unadorned sentence that parrots the regulatory language:  "'[A]t the time it opened its investigation, IER had information supporting a reason to believe' that such violations occurred."  R. & R. at 6 (quoting ECF No. 20-1 at 2).  As even the Magistrate Judge recognized, "there's no meat on the bone" of that "terse[,]" "skeletal" statement. *Id.*  And at the hearing, the Magistrate Judge suggested

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

that he "might not" find that conclusory declaration sufficient. *See* Tr. 31 ("I could potentially exercise my discretion and just say that [IER's] present declaration is sufficient. But I might not."). But he ultimately found that lone sentence, without more, sufficient to meet the government's prima facie burden.

SpaceX does not contest that the government may make a prima facie case of its enforcement authority via affidavit. *See Garner*, 126 F.3d at 1143. But that doesn't mean any affidavit will do. "A prima facie case will not be found if the supporting materials are conclusory." *Larimi v. INS*, 782 F.2d 1494, 1496 (9th Cir. 1986) (discussing prima facie showing in asylum case); *see, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("conclusory allegations . . . are insufficient to establish a prima facie showing of personal jurisdiction"); *Abram v. City and Cnty. of San Francisco*, No. C 07-3006 PJH, 2008 WL 4462104, at *4 (N.D. Cal. Oct. 3, 2008) (plaintiff's declaration insufficient to establish prima facie discrimination case where it "contain[ed] no particularized or detailed facts" but was "comprised almost exclusively [of] improperly overbroad and conclusory language"); *cf. Humphrey v. Dep't of Def.*, No. MC 18-00369 DKW-KJM, 2018 WL 5020209, at *3 (D. Haw. Oct. 16, 2018) (agency affidavit satisfied prima facie showing where it included details that "specifie[d] the links" between subpoenaed materials and active investigation). Just as a "district court 'need not defer to the [agency's] decision'" that certain material is relevant, R. & R. at 4 (quoting *McLane Co., Inc. v. EEOC*, 137 S. Ct. 1159, 1169 (2017)), a district court need not defer to IER's conclusory statement regarding its own authority, either. The Magistrate Judge erred in so deferring.

2.    IER's Skeletal Statement Should Not Have Been Accepted Without Further Inquiry.

Even if IER's conclusory statement could satisfy the government's prima facie burden, the Magistrate Judge erred again in treating the prima facie case as ending, rather than beginning, the inquiry. Specifically, in considering "SpaceX's skepticism about the

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

timing or source of the unfair documentation investigation," the Magistrate Judge held that IER owed no obligation to go beyond its prima facie case: "IER has adequately demonstrated that it had a *prima facie* reason to open and conduct its independent inquiry." R. & R. at 7–8.

That was error. "Typically, 'prima facie evidence' is defined as" evidence "sufficient to establish a given fact . . . and which *if not rebutted or contradicted*, will remain sufficient.'" *Virginia v. Black*, 538 U.S. 343, 369 (2003) (quoting Black's Law Dictionary 1190 (6th ed. 1990)) (emphasis added). In other words, not only must the prima facie showing be "sufficient" (*i.e.*, not merely conclusory), it remains subject to being "rebutted or contradicted." *Id.* Here, SpaceX—despite having next to no insight into IER's opaque investigatory practices—still managed to contradict IER's "reason to believe" rationale for its investigation in three distinct ways.

First, the record is clear that IER opened its investigation into SpaceX's supposed "unfair documentary practices" *on the same day* it accepted the Charging Party's individual charge. *See* R. & R. at 2 (describing the multiple investigations IER launched in May 2020); Appl. for Order to Comply with Admin. Subpoena ¶ 6, ECF No. 1 (IER opened investigation into "unfair documentary practices" on May 29, 2020). That timeline strongly implies that IER opened its investigation into what IER called SpaceX's "possible" documentary-practices violations (Ex. 4 to the Cardaci Decl., ECF No. 19-5) based solely on the Charging Party's unrelated charge. In fact, IER's OCAHO filing *expressly* tied its unfair documentary practices investigation to the Charging Party's allegations, rather than some "independent" belief that SpaceX engaged in unfair documentary practices.[2] *See* Jan. 27, 2021 Sandoval Decl. Ex. 6 at 53, ECF No. 1-3 ("The Charging Party alleges that SpaceX engaged in citizenship status discrimination and

---

[2] As the Magistrate Judge found, and as logic dictates, the unfair documentary practices investigation does not have any relation to the Charging Party's allegations, and to SpaceX's knowledge IER has never repeated its claim that the Charging Party alleged a pattern and practice of unfair documentary practices.

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

unfair documentary practices . . . ."); *but see, e.g.*, IER Reply at 6 (distinguishing between "charge-based" and concurrent "independent" investigations).  The Magistrate Judge thus should have denied IER's application after finding that the documentary-practices investigation has no "logical relationship to the investigation initiated regarding the company's decision not to hire" the Charging Party. R. & R. at 6.  At the very least, IER's compressed timeline—in which IER concededly both accepted an individual charge *and* coincidentally identified an independent "reason to believe" that SpaceX committed a discrete statutory violation *on the very same day*—demands a further inquiry, which this Court may order.  *See* Fed. R. Civ. P. 72(b)(3) (district court may "receive further evidence" or "return the matter to the magistrate judge with instructions").

Second, the only specific explanations IER gave in briefing to justify its need for documents that pertain to SpaceX's "onboarding" practices pertained exclusively to SpaceX's *interviewing* process. *See*, *e.g.*, IER Reply at 11–12, ECF No. 20 (describing, inter alia, SpaceX's supposedly "unified hiring procedure" and aspects of the Charging Party's screening process); *see also* Tr. 13 (IER: suggesting that hiring process involves screening, interviewing, and onboarding, but noting that "on-boarding . . . is when the Form I-9 process occurs").  The Magistrate Judge correctly found that "IER hasn't remotely explained how I-9 records obtained during the 'onboarding' process for hired employees could be probative of alleged misconduct" relating exclusively to *interviewing*.  R. & R. at 6.  That strongly indicates that IER has an overly broad conception of what it means to have a "reason to believe" a violation occurred.  *See, e.g.*, *id.* (conjecturing that, "if there is potential discrimination in the screening and interview process there could also be a similar form of discrimination in the on-boarding process").  At a minimum, IER's expansive interpretation of its own investigative authority demanded that it make a less-conclusory evidentiary showing.

Third, IER had multiple opportunities to explain its "reason to believe" that a violation had occurred or was occurring—including during its months-long investigation

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

into SpaceX, in the proceeding before OCAHO, in its initial application to this Court, and even to the Magistrate Judge when offered the chance to do so *ex parte* and *in camera*. The Magistrate Judge emphasized how such discussions with government officials, including in related contexts, "happen[ed] all the time and [are] entirely appropriate." Tr. 38. For its part, SpaceX did not object to the Magistrate Judge's offer. *See id.* at 38–39. Yet "the government declined – even in a non-public context, and with the consent of the company – to explain to the Court anything about the nature of its investigations into SpaceX." R. & R. at 6. The government's puzzling response to the Magistrate Judge's eminently reasonable offer should have triggered a negative inference. At the very least, it should have compelled the government to proffer non-conclusory evidence. The Magistrate Judge's refusal to require either one was error.

### 3. Ruling in SpaceX's Favor Will Not Open Up Agencies To Searching Review

Denying IER's subpoena will not interfere with legitimate IER investigations going forward. SpaceX did not argue before the Magistrate Judge—and does not argue now—that the court needs to conduct a particularly searching inquiry into the government's basis for its investigation, or otherwise clear some insurmountable hurdle to enforce a subpoena. In many cases, IER's authority to investigate will not be questioned—such as when (as is typical) it investigates allegations actually contained in a charge accepted by the agency. Indeed, SpaceX spent over 100 hours responding to IER's information requests with a lengthy narrative response and thousands of pages of documents relating to the Charging Party's allegations. And as the cases cited by both parties make clear, there are many investigations in which a charging party expressly alleges "pattern or practice" violations. *See, e.g., EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (charging party filed charge of discrimination on behalf of himself and similarly situated African American and Latino employees); *EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1107 (C.D. Cal. 2009) (charging party alleged that females as a class were

1   paid less than males); *In re Investigation of NHS Hum. Servs.*, 10 OCAHO no. 1198, 1
2   (2013), 2013 WL 4502693 (charging party alleged that company engaged in document
3   abuse).

4          Even in cases in which IER relies on its authority to investigate on its "own
5   initiative" under 28 C.F.R. § 44.304(a) (rather than based on allegations contained in a
6   charge of discrimination), the government's authority will typically be demonstrated with
7   a modest showing.  And as this case demonstrates, if IER's "reason to believe" is based
8   on sensitive information, it will have the opportunity to make that showing through a
9   sealed or *in camera* submission.  In fact, despite finding IER's investigation logically
10  disconnected from the Charging Party's allegations, the Magistrate Judge *still* gave the
11  agency the opportunity to justify its broader investigation through an *ex parte*, *in camera*
12  submission (though IER rejected the offer).  *See* Tr. 36 (Magistrate Judge:  "I'm offering
13  you an opportunity to augment that record in a way that recognizes the legitimacy of the
14  law enforcement privileges that you've raised.").

15         What IER should not be permitted to do, however, is to tell a coequal branch of
16  government to simply take its word for it.  True, the Magistrate Judge pointedly criticized
17  IER for its failure to participate in "a quick in camera discussion between the judge and
18  the DOJ lawyers," which "might have resolved this dispute" and "obviated the need to
19  expend judicial resources in this busy federal court." R. & R. at 9 n.6; *see id.* (sending
20  copy of order to U.S. Attorney "so she'll know how her out-of-town colleagues handled
21  the matter").  But he then rubber-stamped IER's bald assurance—essentially, "trust that
22  we have a good reason to believe"—as sufficient to establish IER's authority to open a
23  far-reaching independent investigation.  Allowing IER to self-proclaim its own authority
24  to investigate undermines the judicial branch's obligation to serve as a check on the
25  executive and makes this Court's role in enforcing IER subpoenas largely superfluous.
26  The Magistrate Judge instead should have found that the government failed to meet its
27  burden, or at least required the government to make a greater showing rather than simply
28

15

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

relying on DOJ's say-so.  *Cf. McLane*, 137 S. Ct. at 1169 (district court "need not defer to the [agency's] decision" regarding relevance).  Those errors are ones this Court can and should correct on *de novo* review.

## V.   **CONCLUSION**

For the foregoing reasons, this Court should reject the Magistrate Judge's Report and Recommendation and deny the government's application for an order requiring SpaceX to comply with its subpoena.


Dated:  April 12, 2021                          AKIN GUMP STRAUSS HAUER &
                                                FELD LLP


                                                By:      */s/ Charles F. Connolly*
                                                     Charles F. Connolly *(Pro Hac Vice)*
                                                      James Tysse *(Pro Hac Vice)*
                                                     Joseph DiPiero *(Pro Hac Vice)*
                                                          Jessica H. Ro

                                                    Attorneys for Respondent
                                                Space Exploration Technologies, Corp. d/b/a
                                                          SPACEX

RESPONDENT'S OBJECTIONS TO UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION