1  JENNIFER A. DEINES (SBN 334877)
   Acting Deputy Special Counsel
2  C. SEBASTIAN ALOOT (SBN 68410)
   Special Litigation Counsel
3  LISA R. SANDOVAL (NY SBN 5108865)
   SEJAL P. JHAVERI (NY SBN 5396304)
4  Trial Attorneys
   U.S. Department of Justice
5  Civil Rights Division
   Immigrant and Employee Rights Section
6  950 Pennsylvania Avenue NW
   Washington, DC 20530
7  (202) 532-5736 (Sandoval)
   (202) 305-7376 (Jhaveri)
8  (202) 616-5509 (Fax)
   Lisa.Sandoval@usdoj.gov
9  Sejal.Jhaveri@usdoj.gov

10 Attorneys for the United States

11            UNITED STATES DISTRICT COURT

12       FOR THE CENTRAL DISTRICT OF CALIFORNIA

13               WESTERN DIVISION

| | |
|---|---|
| 14  UNITED STATES OF AMERICA, | No. 2:21-mc-00043-DMG-MRW |
| 15                    Petitioner, | **APPLICANT'S RESPONSE TO** |
| 16                    v. | **RESPONDENT'S OBJECTION TO REPORT AND** |
| 17  SPACE EXPLORATION | **RECOMMENDATION** |
| 18  TECHNOLOGIES CORP, d/b/a SPACEX, | |
| 19                    Respondent. | |

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                    PAGE

**TABLE OF AUTHORITIES**.................................................................. ii

**RESPONSE TO RESPONDENT'S OBJECTION TO REPORT**

**AND RECOMMENDATION**..........................................................1

I.     Background and Accurate Restatement of Facts .................................1

II.    Legal Standard ..........................................................................4

III.   Argument .................................................................................5

       A. *The Magistrate Correctly Found the Subpoena Fully Enforceable* ..............5

       B. *The Subpoena Enforcement Test does not Require IER to Disclose the*
          *Underlying Facts of Its Independent Investigation.* .......................7

       C. *The Court Should Not Add a Level of Judicial Review to the Established*
          *Administrative Subpoena Enforcement Test By Requiring Agencies to*
          *Reveal Investigative Techniques and Rationales at the Outset of Their*
          *Investigations*.................................................................9

IV.    Conclusion .............................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. GT Drywall, Inc.*,
2017 WL 3262109 (C.D. Cal. June 26, 2017) ......................................... 5

*EEOC v. Child.'s Hosp. Med. Ctr. of N. California*,
719 F.2d 1426 (9th Cir. 1983) ........................................................ 5

*EEOC v. Fed. Express Corp.*,
558 F.3d 842 (9th Cir. 2009) ................................................... *passim*

*EEOC v. Karuk Tribe Hous. Auth.*,
260 F.3d 1071 (9th Cir. 2001) ....................................................... 5

*EEOC v. Randstad*,
685 F.3d 433 (4th Cir. 2012) ........................................................ 5

*Fed. Mar. Com'n v. Port of Seattle*,
521 F.2d 431 (9th Cir. 1975) ........................................................ 9

*FTC v. Texaco, Inc.*,
555 F.2d 862 (D.C. Cir. 1977) ....................................................... 9

*Finks v. Riverside Co.*
2016 WL 3025334 (C.D. Cal. May 26, 2016) ........................................ 4

*Humphrey v. DOD*,
2018 WL 5020209 (D. Haw. Oct. 16, 2018) ......................................... 7

*In Re Investigation of Carolina Emps. Ass'n, Inc.*,
3 OCAHO 455 (1992), 1992 WL 535611 (Sept. 17, 1992) ............................. 8

*In Re Investigation of Space Exploration Technologies Corp. d/b/a SpaceX*,
14 OCAHO no. 1378 (2020), 2020 WL 7319344 (Dec. 1, 2020) ................... 5, 8

*Larimi v. INS*,
782 F.2d 1494, 1496 (9th Cir. 1986) ................................................ 7

*United States v. Life Generations*, *LLC*,
11 OCAHO no. 1227 (2014), 2014 WL 4955643 (Sept. 11, 2014) .................... 3

*United States v. Sturm, Ruger, & Co.*,
84 F.3d 1 (1st Cir. 1996) ................................................................. 5-6

**Federal Statutes**

8 U.S.C. § 1324b ................................................................. 1, 6

28 U.S.C. § 636 ................................................................. 4

**Federal Regulations**

28 C.F.R. § 44.301 ................................................................. 2

Fed. R. Civ. P. 72 ................................................................. 4

1 | **APPLICANT'S RESPONSE TO RESPONDENT'S OBJECTION TO REPORT**
2 | **AND RECOMMENDATION**

3    Applicant, the United States of America, through the U.S. Department of Justice
4 attorneys listed below, respectfully submits this Response to Space Exploration
5 Technologies Corp. d/b/a SpaceX's ("SpaceX") Objection to the Magistrate Judge's
6 Report and Recommendation to grant the Immigrant and Employee Rights Section's
7 ("IER") application to enforce Investigatory Subpoena No. 2021S00001 ("Subpoena").

8 | **I.     Background and Accurate Restatement of Relevant Facts**

9    The United States filed its Application For Order to Comply With Administrative
10 Subpoena ("Application") because SpaceX has refused to comply with lawful requests
11 for documents that are relevant to the United States' investigation of whether SpaceX
12 engaged in citizenship status discrimination and/or unfair documentary practices, in
13 violation of the Immigration and Nationality Act's ("INA") anti-discrimination
14 provision, 8 U.S.C. § 1324b.  IER is the only office with authority to investigate such
15 claims, and the INA authorizes IER to seek a subpoena from the Office of the Chief
16 Administrative Hearing Officer ("OCAHO") to ensure IER has reasonable access to
17 relevant evidence.  *See* Unfair Immigration-Related Employment Practices, 8 U.S.C.
18 §§ 1324b(d), (f)(2) (1986).  After SpaceX refused to provide supporting documentation
19 attached to its Forms I-9, IER obtained and served the Subpoena, complying with DOJ
20 regulations.  SpaceX then petitioned OCAHO to modify or revoke the Subpoena.  On
21 December 1, 2020, OCAHO denied SpaceX's petition, finding that the Subpoena was
22 fully enforceable and ordering SpaceX to comply with the Subpoena by December 14,
23 2020.  After SpaceX failed to comply with the Subpoena and violated the OCAHO
24 order, IER filed its Application.  Following briefing and a hearing, Magistrate Judge
25 Wilner determined that IER was entitled to the documentation sought by the Subpoena
26 and recommended that this Court grant the Application.

27    The relevant facts are fully set forth in the United States' Application.  Appl. Br.
28 3-6, ECF No. 1-1.  Through its Objection to the Magistrate Judge's Report and

Recommendation, SpaceX returns to its pattern of relying on irrelevant and incorrect statements to challenge Subpoena enforcement.  The United States addresses three of the inaccurate statements in SpaceX's Objection.

First, SpaceX repeats its prior mischaracterizations of IER's investigation.  For instance, SpaceX states that the timing of when IER opened its charge-based and independent pattern or practice investigations is suspicious and requires "further inquiry" because IER opened multiple investigations on the same date.  Resp't's Obj. to R. & R. ("Resp't's Obj.") 1, ECF No. 27.  After SpaceX suggested during the March 18, 2021 hearing that the timing of IER's charge-based and independent pattern or practice investigations was reason to doubt their legitimacy, IER submitted a letter to the Magistrate Judge that same day, explaining why SpaceX's characterization was wrong.  R. & R. Ex. 1, 1-2, ECF No. 24.  The letter clarified that IER regularly engages in preliminary fact-finding during the ten-day window between when IER accepts a charge as complete and notifies the respondent of the charge and IER's investigation.  During this initial investigation, it is not unusual for IER to obtain information supporting a reason to believe that the employer may be engaging in a pattern or practice of discrimination against individuals other than Charging Party in violation of § 1324b. IER also conducts similar preliminary investigations to determine whether a charge submission that is inadequate because it does not contain all the required information by DOJ regulations should be accepted as complete.  Receipt of Charge, 28 C.F.R. § 44.301(d) (2017).  During this time, it is also not uncommon for IER to discover information supporting a reason to believe an investigated entity may be engaging in systemic discrimination.  Accordingly, IER typically issues a single notice letter that notifies the employer of both the charge-based and pattern or practice investigation.  The date on which such investigations are accepted as complete, or "opened," and the fact that respondents are notified of charge-based and independent pattern or practice investigations at the same time, provide no reason to question IER's authority to investigate or the legitimacy of its investigations.  *Id*.

1    Second, SpaceX incorrectly asserts that Charging Party did not allege that SpaceX
2    engaged in an unfair documentary practice in violation of § 1324b(a)(6), and that IER's
3    pattern or practice investigation of unfair documentary practices is therefore unrelated to
4    the charge.  *See* Resp't's Obj. at 3 ("IER accepted a charge from a Charging Party who
5    alleged citizenship status discrimination . . . . [and] IER opened . . . an apparently
6    unrelated investigation concerning 'unfair documentary practices.'"); *id.* at 12 n.2
7    ("[IER's] unfair documentary practices investigation does not have any relation to the
8    Charging Party's allegations . . . .").  Instead, IER notified SpaceX on June 8, 2020, that
9    Charging Party's charge alleged both hiring discrimination based on citizenship status in
10   violation of § 1324b(a)(1), as well as unfair documentary practices based on citizenship
11   status in violation of § 1324b(a)(6).  Sandoval Decl. Ex. 1, at 1, ECF No. 1-3.  While
12   SpaceX did not hire Charging Party and he therefore did not complete a Form I-9, IER
13   has at all times indicated that Charging Party's charge alleges a violation of both
14   §§ 1324b(a)(1) and (a)(6).  As OCAHO has consistently found, and contrary to SpaceX's
15   assertion, unfair documentary practices violating § 1324b(a)(6) do not exclusively occur
16   during the Form I-9 process, and can take place at any point in the recruitment and hiring
17   processes.  *See, e.g.*, *United States v. Life Generations, LLC*, 11 OCAHO no. 1227, 23
18   (2014), 2014 WL 4955643, at *20, 24 (Sept. 11, 2014) (explaining that unfair
19   documentary practices can occur during any point in the hiring process, including the
20   application and interview stages, "before any hiring decisions [are] even made").  For
21   instance, "prescreening" occurs when an employer engages in an unfair documentary
22   practice by prematurely asking for specific, more, or different documents than necessary
23   for employment eligibility verification purposes.  *Id*.
24       Third, SpaceX incorrectly states that attachments to Forms I-9 are relevant only to
25   unfair documentary practices claims.  IER has previously provided numerous examples
26   in its filings and at the March 18, 2021 hearing of how attachments to Forms I-9 are
27   relevant evidence of not only unfair documentary practices that violate § 1324b(a)(6) but
28   also hiring discrimination based on citizenship status in violation of § 1324b(a)(1).

Appl. Br. 11, ECF No. 1-1.  For instance, Forms I-9 and their supporting documentation can be evidence of an individual's citizenship status, which is clearly relevant to an investigation into whether an employer prefers to hire only U.S. citizens in violation of § 1324b(a)(1)(B).  If an employer's Forms I-9 and attachments show, for example, that the employer has not hired a single non-U.S. citizen during a particular timeframe, the documents could serve as evidence of hiring discrimination based on citizenship status in violation of § 1324b(a)(1).  Or an employer that prefers to hire only U.S. citizens might rescind an individual's job offer after learning the employee's Form I-9 shows she is a lawful permanent resident.  The Form I-9 and supporting documents of the individual whose job offer was rescinded could serve as evidence of the employer's hiring discrimination based on citizenship status.  Or a staffing agency that receives a request from its corporate client for a U.S. citizen to fill a position might use the Forms I-9 and supporting documentation it has on file for its workforce to screen out non-U.S. citizens when referring workers to that client.  The Forms I-9 and supporting documents of the individuals who were referred for the job compared to those who were not could serve as evidence of hiring discrimination based on citizenship status.[1]

## II.    Legal Standard

After a Magistrate Judge issues a Report and Recommendation, parties may file objections and responses to such objections.  *See generally* Jurisdiction, powers, and temporary assignment, 28 U.S.C. § 636(b)(1) (2009); Fed. R. Civ. P. 72(b)(2).  A district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also Finks v. Riverside Co.*, 2016 WL 3025334, at *1 (C.D. Cal. May 26, 2016).

The parties agree that a district court's scope of inquiry in agency subpoena

---

[1] Like other examples IER has presented in its previous filings and at the March 18, 2021 hearing, these examples are non-exhaustive and do not represent all the scenarios in which Forms I-9 and their attachments would shed light on an investigated entity's hiring practices.

enforcement is limited to whether (1) Congress granted the agency the authority to investigate; (2) procedural requirements have been followed; and (3) the evidence is relevant and material to the investigation. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009).  Once this minimal showing is made by the United States, the district court must enforce the subpoena unless the party being investigated shows the subpoena is overbroad or unduly burdensome. *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (describing the test established in *EEOC v. Child.'s Hosp. Med. Ctr. of N. California*, 719 F.2d 1426, 1428 (9th Cir. 1983)).

### III.   Argument

#### A.  *The Magistrate Correctly Found the Subpoena Fully Enforceable*

The Report and Recommendation correctly found, as did the OCAHO Administrative Law Judge, that the Subpoena is fully enforceable. *See generally* R. & R.; *In Re Investigation of Space Exploration Technologies Corp. d/b/a SpaceX*, 14 OCAHO no. 1378 (2020), 2020 WL 7319344 (Dec. 2, 2020).  In this case, SpaceX objects only to the Report and Recommendation's finding that IER met prong one of the subpoena-enforcement test.  Resp't's Obj. 10.

Courts reviewing the first factor focus on analyzing whether a specific statute authorizes the agency to investigate and obtain information through a subpoena, rather than conducting a searching inquiry into a specific investigation. *Fed. Express Corp.*, 558 F.3d at 848; *Acosta v. GT Drywall, Inc.*, 2017 WL 3262109, at *2-3 (C.D. Cal. June 26, 2017) (adopting R. & R., 2017 WL 3251388 (C.D. Cal. July 28, 2017)) (analyzing only whether the statute authorized the Department of Labor to conduct investigations into violations of the Fair Labor Standards Act and issue subpoenas related to those investigations).  In fact, the Ninth Circuit has clarified that a district court's inquiry into the first prong of the subpoena enforcement test is "strictly limited," and the court should enforce the subpoena unless "jurisdiction is plainly lacking." *Fed. Express Corp.*, 558 F.3d at 848.(internal quotation marks omitted); *see also EEOC v. Randstad*, 685 F.3d 433, 442 (4th Cir. 2012) ("To establish its authority to investigate, the EEOC need only

5

present an arguable basis for jurisdiction.") (internal quotation marks omitted); *United States v. Sturm, Ruger, & Co.*, 84 F.3d 1, 5 (1st Cir. 1996) (rejecting to entertain a challenge to Occupational Safety Health Administration's substantive regulatory authority to investigate, which would defy the will of Congress by requiring the agency to "charge first and investigate later"). This comports with the generally limited role of judicial review at this stage because a searching review of the early stage of an investigation would "interfere[] with the proper functioning of the agency and delay[] resolution of the ultimate question whether the Act was violated." *Fed. Express Corp.*, 558 F.3d at 848.

Here, IER has easily made the minimal showing necessary to establish the agency authority prong of the subpoena-enforcement test, and SpaceX's argument that the Magistrate Judge erred in not engaging in a searching analysis of the precise basis of IER's investigation finds no support in the relevant caselaw. Section 1324b(d)(1) authorizes IER to investigate, and § 1324b(f)(2) gives IER the authority to seek and serve OCAHO-issued subpoenas on any entity being investigated. IER also has statutory authority to investigate potential violations of § 1324b on its own initiative, including where no charge is filed. 8 U.S.C. § 1324b(d)(1) ("The Special Counsel may, on his own initiative, conduct investigations respecting unfair immigration-related employment practices."). Regardless of whether it is investigating a charge, acting on its own initiative, or both, IER has the statutory authority to investigate potential violations of 8 U.S.C. § 1324b, like citizenship status discrimination or unfair documentary practices, and obtain and serve subpoenas in support of those investigations.

Consistent with applicable case law, the Magistrate Judge correctly found that "IER unquestionably has the authority to investigate allegations of misconduct in the employment and I-9 documentation processes" and that SpaceX's filings had not seriously challenged that element of the test. R. & R. 5-6, ECF No. 24. SpaceX now seeks to object to the Magistrate's Judge's Report and Recommendation on this issue, not by arguing IER lacks such authority or providing contradicting caselaw that

6

demonstrates that a searching review of an agency's authority to investigate is required at this stage.  Rather, SpaceX directs the Court's attention to a series of unrelated cases discussing the requirements of a prima facie case at the merits stage of a proceeding instead of the requirements for enforcing an administrative subpoena.  *See* Resp't's Obj. 11-12 (citing, e.g., *Larimi v. INS*, 782 F.2d 1494, 1496 (9th Cir. 1986) (analyzing whether asylum applicant's declaration created a prima facie case for a motion to reopen under an abuse of discretion standard)).  The fact that these cases all share a discussion of the phrase "prima facie" does not, however, alter the legal standard governing the enforcement of an administrative subpoena.  Similarly, SpaceX's reliance on a single case analyzing how a government official's affidavit can support the relevance inquiry of the subpoena-enforcement test fails to grapple with the uniform Ninth Circuit precedent articulating the limited inquiry for the agency-authority prong of the enforcement test.  *See Humphrey v. DOD*, 2018 WL 5020209, at *3 (D. Haw. Oct. 16, 2018) (finding that a government official's declaration was sufficient to meet the relevance prong).  In fact, contrary to SpaceX's argument that a searching review of an agency's authority to investigate is required, the Ninth Circuit has directed district courts to enforce a subpoena where the agency articulates a "plausible ground for jurisdiction." *Fed. Express Corp.*, 558 F.3d at 850-51 (internal quotation marks omitted).

### B. The Subpoena Enforcement Test does not Require IER to Disclose the Underlying Facts of Its Independent Investigation

SpaceX reiterates its now twice-rejected argument that IER must disclose the underlying facts supporting its reason to believe that SpaceX may be engaging in a pattern or practice of discrimination in violation of § 1324b to obtain information relevant to its independent pattern or practice investigation.  Resp't's Obj. 11-13.  As IER previously explained, SpaceX cites no authority requiring IER to disclose to Respondent or the Court the facts serving as the basis of its independent investigation.  Reply to Resp't's Opp'n to Appl. 12-13, ECF 20.  In response to SpaceX's Petition to Revoke or Modify the Subpoena before OCAHO, IER did not disclose to SpaceX or

7

OCAHO the factual basis for opening its independent pattern or practice investigation. In fact, OCAHO explicitly rejected SpaceX's argument that IER was required to do so. *See SpaceX*, 14 OCAHO no. 1378 at 3, 2020 WL 7319344, at *2-3 (2020) (rejecting SpaceX's contention that "IER's refusal to explain its reason for investigating" rendered the Subpoena unenforceable).  The OCAHO ALJ's decision aligns with OCAHO case law on this point.  *See, e.g., In Re Investigation of Carolina Emps. Ass'n, Inc.*, 3 OCAHO 455, 611 (1992), 1992 WL 535611, at *5 (Sept. 17, 1992) (finding that IER, which did not disclose the underlying basis of its independent investigation to respondent or the court, was "under no obligation to provide notice to petitioner as a party that is the subject of a current investigation, of the alleged violations being investigated" or "to disclose the nature of the allegations being investigated" to obtain information as part of its investigation).

SpaceX dedicates much of its Objection to IER's decision not to participate in the Magistrate Judge's proffered *in-camera* meeting to discuss the facts supporting the instant independent pattern or practice investigation.  However, the Magistrate Judge himself acknowledged that IER was not required to engage in such a meeting to support enforcement of the Subpoena.  Moreover, recognizing IER's broad authority to investigate, the Magistrate Judge found that IER "unquestionably" satisfied prong one of the legal enforcement test, even without disclosing its reasons for initiating its independent pattern or practice investigation.  *See* R&R. 6, ECF 24.  Therefore, SpaceX's argument that the Court should draw an undefined "negative inference" from IER's decision to forgo a voluntary *in-camera* meeting is groundless.  Resp't's Obj. 14. While SpaceX may wish to catch a glimpse of IER's privileged law enforcement techniques underlying IER's independent investigative authority, IER is not required to disclose this information to obtain evidence relevant to its investigation, as both OCAHO and the Magistrate Judge have already found.

   *C. The Court Should Not Add a Level of Judicial Review to the Established Administrative Subpoena Enforcement Test By Requiring Agencies to Reveal Investigative Techniques and Rationales at the Outset of Their Investigations*

  SpaceX's arguments as to IER's authority to investigate are nothing more than a transparent attempt to force IER to reveal its investigative techniques despite no legal requirement to do so, and to prematurely resolve the merits of the investigation, long before IER has made a reasonable cause determination as to whether SpaceX has violated § 1324b.  SpaceX's request for an invasive judicial review would require IER to provide information about its investigatory techniques, including how it conducts initial investigations, common sources of information it reviews, and how quickly it develops this information.  Requiring such an invasive look into investigative techniques, even if revealed solely to the Court, would hamper all administrative investigations and burden the judiciary by requiring it to engage in a searching analysis before an agency has even completed an investigation and determined if a violation of the law occurred.  SpaceX's calls for additional judicial review are a thinly veiled attempt at challenging the merits of the allegations—its  briefing is replete with language dismissing the Charging Party as untrustworthy and asserting its own innocence, which has nothing to do with the proceeding at hand.  *See e.g.* Resp't's Obj. 1, Resp't's Opp'n to Appl. 3-4.  SpaceX also continues to cite other laws and regulations to justify its handling of Charging Party's application and interview and other actions it may have taken at a systemic level. Resp't's Obj. 1-2.  To the extent that any of these laws and regulations affect the inquiry into whether SpaceX has violated § 1324b, these arguments are inappropriate for a subpoena enforcement proceeding because they go to the merits of IER's investigation, as the Magistrate Judge acknowledged during the hearing.  Hr'g at 27-29; *see also EEOC v. Fed. Express Corp.*, 558 F.3d at 848 ("[A] party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it.").

9

The prohibition against challenging the merits of the underlying allegations is consistent with agencies' duty to expeditiously complete their investigations. Courts have long held that agencies, like IER, are granted broad investigative authority and charged with expeditiously exercising that authority over entities it has the right to investigate. *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975); *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977). To allow the deep, searching judicial inquiry that SpaceX requests would impede investigations across the board and allow entities IER investigates to unnecessarily grind investigations to a halt by seeking the district court's intervention when the entity simply believes that it has not violated the statute. *See Fed. Express Corp.*, 558 F.3d at 848. SpaceX unconvincingly downplays this reality by stating, "if IER's reasons for opening the investigation are based on sensitive information, it will have the opportunity to make that showing through a sealed or in camera submission." Resp't's Obj. 15. SpaceX thus concedes that requiring IER to disclose the underlying facts of its independent investigations to the Court simply to enforce a subpoena would allow investigated entities to pursue *in-camera* review any time they, like SpaceX, wanted to delay an investigation and assert their own innocence on the merits. This would certainly impede IER's investigations and waste precious judicial resources.

## IV.  Conclusion

Having met all the procedural prerequisites and satisfied all applicable legal standards, the United States requests an Order from this Court adopting the Report and Recommendation and requiring SpaceX to comply with the Subpoena within 14 days.

1 | Dated: April 26, 2021

Respectfully submitted,

JENNIFER A. DEINES
Acting Deputy Special Counsel
C. SEBASTIAN ALOOT
Special Litigation Counsel


   /s/ *Lisa R. Sandoval*
LISA R. SANDOVAL
SEJAL P. JHAVERI
Trial Attorneys
Attorneys for the United States